**UNITED STATES of America, Appellee,**

v.

**John William POWERS, Defendant, Appellant.**

**No. 7284.**

United States Court of Appeals First Circuit.

July 14, 1969.

Certiorari Denied Nov. 10, 1969.

See 90 S.Ct. 256.

Stanislaw R. J. Suchecki, Asst. U. S. Atty., with whom Paul F. Markham, U. S. Atty., and Garrett C. Whitworth, El Paso, Tex., were on brief, for appellee.

Before ALDRICH, Chief Judge, Mc-ENTEE and COFFIN, Circuit Judges.

COFFIN, Circuit Judge.

This is an appeal from a conviction under the Military Selective Service Act of 1967, 50 U.S.C. App. § 462(a). Appellant, John William Powers, was sentenced to two years imprisonment for failing to comply with an order of his Middleboro, Massachusetts draft board to report and submit to induction.

Appellant registered with his local board in April 1966. He requested a Form 150, Special Form for Conscientious Objectors, by signing the appropriate space on his Classification Questionnaire. He received a Form 150, but did not fill it out, and returned it to the board with a note indicating that he was withdrawing his claim. The reason now alleged for his failure to complete the Form 150 is that he was misled by the form and wording of the Supreme Being question into thinking that one must possess an orthodox religious belief to qualify.

In March 1967 appellant's mother requested that her son be given a hardship deferment. A Dependency Questionnaire was filed and the board granted appellant a personal interview on April 12, 1967. The board awarded him a III–A (hardship) deferment for one year. The board Executive Secretary subsequently wrote one Dr. Zawacki to inquire whether appellant's presence at home was necessary to protect his mother from an older schizophrenic brother. The doctor replied that appellant was not needed at home. This letter was laid before the board at their May 1967 meeting. No action, however, was taken until June 1967 when the board revoked appellant's III–A deferment and reclassified him I–A. Appellant attacks the procedures surrounding this revocation.

Ronald F. Kehoe, Boston, Mass., by appointment of the Court, for appellant.

Appellant failed to request a personal appearance or to appeal this new I–A classification. He received a Notice of Classification (SSS Form 110), and Notice of Appeal (SSS Form 217). Appellant's mother resided in the same home as did appellant. She testified that she knew he had received a notice. She claimed, however, that she could not recall receiving a Classification Advice (SSS Form 111) which the Executive Secretary said had been sent. The jury impliedly found that she had received such an Advice.

The evidence is undisputed that the Executive Secretary in December 1967 selected appellant to report for induction without formal board authorization. The Executive Secretary also signed the induction order. Appellant places the legality of both actions in issue.

Appellant failed to report for induction on January 24, 1968.[1] He was indicted in August 1968.

Appellant asserts that only after indictment did he learn of the significance of the United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965), decision. In September 1968 he requested another Form 150. The Deputy State Director of Selective Service, Colonel Paul Feeney, advised the board to issue the Form. It was issued and appellant completed and returned it. The board refused to consider the Form 150, asserting that the case was "out of their hands".

On October 21, 1968, appellant's mother requested a form in order to file a new hardship deferment claim, on the basis that her income had been reduced by a daughter moving out of the household. Though advised by Colonel Feeney that the board could issue the form, the chairman postponed action until the next meeting. In the meantime, however, Mrs. Powers had obtained a sample form, filled it out and, filed it along with other documentation. Before the board actually met again, appellant's case had been called for trial. Appellant contends that the board was required to reopen his case, which would allegedly have cancelled the induction order and have mooted the prosecution.

### THE FORM 150 ISSUE

■ Appellant contends that a question on SSS Form 150, Special Form for Conscientious Objectors, so misled him that he withdrew his application for conscientious objector status and that "elementary fairness requires that the board cure the defect by considering and acting upon the aborted claim." He asserts that the question "Do you believe in a Supreme Being", coupled with a form allowing only a "yes" or "no" answer led him to the conclusion that one must possess an orthodox religious belief —which he did not feel he possessed—to qualify for the exemption. Appellant submits that it was impossible for him to give a mere "yes" or "no" answer to this question. Appellant further submits that Selective Service was at fault in providing a 1959 version of this form after the expansion of "religious" given by the Court in United States v. Seeger, supra.[2]

While the 1959 Form 150 may have presented some obstacles to presentation of a registrant's case, we do not find them insurmountable. The form allowed the use of "extra sheets of paper";

1. The appellant's failure to appear at the reporting date has not been urged by the government as a bar to consideration of the merits. Even had the point been argued, we suspect that the circumstances of this case fall well within the rationale of United States v. McKart, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (U.S. Supreme Court, May 26, 1969). Here appellant had taken an enlistment physical examination, was challenging not merely his reclassification but the validity of the order to report, and had in fact appeared at his local board on the day prior to the reporting date. Here, as in McKart, there is no problem of litigious interruption; the administrative process had come to an end.

2. We note that Congress deleted the reference to "Supreme Being" in the 1967 Act. 50 U.S.C. App. 456(j). Subsequently, Selective Service amended Form 150.

question 2 under Series II invited a registrant to expound in detail regarding his religious beliefs; and we note that the alleged confinements of the form did not prevent appellant from submitting his beliefs on it in September 1968, after he had refused induction. Nowhere did the form state that one must believe in a Supreme Being to qualify.

This is not a case where a registrant was affirmatively misled by a Selective Service employee or official. *See, e.g.,* Powers v. Powers, 400 F.2d 438 (5th Cir. 1968). Here the evidence is undisputed that appellant unilaterally decided that he could not qualify. We take judicial notice that a registrant's Notice of Classification, which is required to be in his personal possession at all times, United States v. O'Brien, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968), advises registrants in large capital letters:

"For Information and Advice, Go To Any Local Board

This notice also advises the registrant of the availability of Government Appeal Agents. *See* 32 C.F.R. § 1604.71. The board may also have advisors "to advise and assist registrants in the preparation of questionnaires and other selective service forms." 32 C.F.R. § 1604.41. Their names and addresses are to be "conspicuously posted in the local board office". The regulations also declare that Selective Service has "a positive information policy". 32 C.F.R. § 1606.61.

Despite the possible availability of information and advice at the local board, there is no evidence that appellant sought out such aid when he personally returned the form to the board in May 1966. While there is an affirmative duty on local boards in certain instances to notify registrants regarding procedural rights, *see* Steele v. United States, 240 F.2d 142 (1st Cir. 1956), the instant case does not present such a situation. Were unilateral, subjective, uncounselled misunderstanding of Selective Service requirements and definitions to be a defense to prosecution, an already laboring vehicle would in all likelihood be completely immobilized.

## PREMATURE REVOCATION OF HARDSHIP DEFERMENT

■ We are unable to question whether the board had a "basis in fact" for revoking appellant's hardship deferment, because appellant knowingly failed to exhaust his administrative remedies either by requesting a personal appearance or appealing. Powers stated in his September 1968 Form 150 and again repeated at trial that he failed to appeal his June 1967 I–A classification because "I didn't like the idea of telling you people all about my family problems * *." and "I wanted a chance to confront the law * * *." This is not one of those exceptional cases where knowing failure to appeal does not preclude judicial review. United States v. McKart, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (U.S. Supreme Court, May 26, 1969).[3]

3. While recognizing that a registrant may be at a strategic disadvantage in appearing before a board which has already revoked a deferment rather than before one which is merely considering whether to revoke it, we cannot say that lack of provision for pre-revocation notice and appearance is violative of due process. In our view the existing provisions regarding personal appearances and appeals offer adequate procedural protection. A registrant is presumed to be familiar with the contents of his Selective Service file. Gonzales v. United States, 364 U.S. 59, 80 S.Ct. 1554, 4 L.Ed.2d 1569 (1960). Powers had the opportunity under the regulations to examine his file, to read the board-Dr. Zawacki correspondence, and to present rebuttal at a personal appearance. His mother also might have been allowed to appear with him. 32 C.F.R. § 1624.1(b). Appellant, however, failed to request a personal appearance even though he was specifically notified of this right and of the availability of a Government Appeal Agent to assist him with his procedural rights.

Appellant's failure to contest the propriety of his classification by appeal, 32 C.F.R. § 1626.12, also precludes us from

## The Post-Indictment Dependency Claim

Appellant seeks to distinguish United States v. Stoppelman, 406 F.2d 127 (1st Cir. 1969), in which we held that a registrant has no right to have his conscientious objector claim considered if he first asserted it after the induction date. He contends that there was here a demonstrable change in his mother's financial circumstances after the induction date and therefore that there was no question of his sleeping on his rights, unlike the situation in *Stoppelman*. He further argues that what is involved here is his mother's claim and that his refusal of induction should not affect her rights.

Admittedly *Stoppelman* was concerned with a late-filed conscientious objector claim, which necessarily involves evidence more subjective in nature than that ordinarily present in a hardship request. But it remains true that once a valid order to report for induction has been wilfully disobeyed, a crime has been committed, and "[w]hat occurs after refusal * * * is not relevant to that issue." Palmer v. United States, 401 F.2d 226, 228 (9th Cir. 1968); Blades v. United States, 407 F.2d 1397 (9th Cir. 1969). United States v. Burlich, 257 F.Supp. 906 (S.D.N.Y.1966), heavily relied upon by appellant, is not to the contrary, for it simply recognizes the obligation of a board *prior* to the date of issuance of the induction order to reopen a registrant's classification if he presents a prima facie case for a hardship deferment. Not to do so invalidates the induction order. *Id.* at 913.

## The Clerk Signature Issue

■ Appellant argues that the local board Executive Secretary, Mrs. Stonkus, "had not been authorized to sign the order to report as an official paper." The regulations provide that "[o]fficial papers issued by a local board may be signed by the clerk of the local board if he is authorized to do so by resolution duly adopted by and entered in the minutes of the meetings of the local board * * *." 32 C.F.R. § 1604.59.

The minutes of local board 130 of December 19, 1950 (Exhibit 41) were admitted into evidence. These minutes state:

"Mr. Maxim then moved that the Clerk, when hired, be authorized to sign all papers and forms so privileged for and under direction of the Board. Mr. Barstow seconded. So voted."

Appellant contends that this "blanket authorization for whoever was hired effectively thwarts" the regulation, because one inquiring regarding the validity of the induction order is never certain that "the *person* who has signed his induction order is, in fact, the clerk and duly authorized." Appellant further contends that this blanket delegation is contrary to the regulation "which contemplates a separate judgment as to the desirability of authorizing each successive clerk" and that if a blanket authorization was intended "the regulation itself could have conferred it on all clerks without providing for a special vote."

We consider the December 19, 1950 resolution to be adequate. We note that Mrs. Stonkus was hired by the board on December 21, 1950 and has served as clerk ever since.[4] If the board had felt that its recently passed resolution granted too much authority to this employee, they could have easily changed it. While the absence of any delegation might present a question regarding the Executive Secretary's authority to sign such orders, *but see* United States v. Crowley, 405 F.2d 400, 403 (4th Cir.

considering his argument that the local board "improperly relied on personal knowledge of its members in classifying the defendant I–A."

4. A new "official papers" resolution was passed by the board in September 1968. This was apparently due to a change in Mrs. Stonkus' title from clerk to Executive Secretary under the Military Selective Service Act of 1967. While defendant's induction order was issued under the 1967 law (Dec. 1967) but prior to this new resolution, we cannot deem such a technical defect prejudicial.

1968), cert. denied, 394 U.S. 904, 89 S. Ct. 1011, 22 L.Ed.2d 215 (1969); United States v. Lawson, 337 F.2d 800 (3d Cir. 1964), cert. denied, Lawson v. United States, 380 U.S. 919, 85 S.Ct. 913, 13 L. Ed.2d 804 (1965), that is not this case.[5]

### THE SELECTION ISSUE

■ Not to be confused with appellant's signature argument is his contention that "the order for the defendant to report for induction was not authorized by the local board and is a nullity."

Appellant cites regulation 1631.7 which requires the board, upon a call, to "select and order to report for induction the number of men required to fill the call from among its registrants * * *." Also cited is regulation 1604.52a(c) which requires that "all questions arising in the selection of registrants for * * * induction * * * shall be determined by the local board as a whole". See also 50 U.S.C. App. § 460(b) (3); 32 C.F.R. § 1632.1. Appellant relies on Brede v. United States, 396 F.2d 155 (9th Cir. 1968) [Brede I], mod. and reh'g den., 400 F.2d 599 (1968) [Brede II], for the proposition that action by the clerk, absent a specific resolution, cannot be an order of the board.

The rationale is apparent. Only the board can exercise its discretion to induct those delinquents or volunteers under § 1631.7(a) who have not yet been found acceptable, or to reclassify a registrant. Appellant gives the example of registrants who have become ministers, theological students, or who have commenced an occupation recognized as a basis for deferment. Once, however, the order to report has been sent, the board loses this power, except where there are changes beyond the control of the registrant. 32 C.F.R. § 1625.2.

In this case the clerk, not the board, compiled the delivery list from the file containing the names of available and acceptable I–A registrants, when the call came down from state headquarters. There was no evidence or contention that the clerk did anything other than draw names of I–A registrants in accordance with the sequence prescribed in § 1631.7. There was no evidence or contention that there was any new information submitted by appellant for consideration by the board. 32 C.F.R. § 1625.2.[6] There was no evidence or allegation that there existed delinquents or volunteers who should have been called before appellant. Furthermore, our examination of the delivery list reveals no possibility that appellant could have escaped being reached for the January 24, 1968 delivery.[7]

5. Appellant also argues that "there is no evidence or testimony on this record that Exhibit 41 was 'duly adopted',, or that it was entered in the minutes of the meetings of the board, as required by Section 1604.59." Exhibit 41, however, which was admitted in evidence, specifically lists such a resolution under the heading MINUTES and it is recorded that this resolution was "so voted". Moreover, the Executive Secretary testified that the board had authorized her to sign official papers and had passed an official vote to this effect.

6. It is not necessary that there be new facts in a registrant's file for a "question" to arise regarding his classification requiring the exercise of board discretion. Bradshaw v. United States, 242 F.2d 180, 186 (10th Cir. 1957); United States v. Adamowicz, 119 F.Supp. 635, 639 (N.D. Ill.1954). A local board can re-open a

classification on its own motion "if such action is based upon facts not considered when the registrant was classified which, if true, would justify a change in the registrant's classification * * *." 32 C.F.R. § 1625.2(b). We must presume, however, in the absence of any showing to the contrary by appellant, that the board considered all facts in appellant's file when it reclassified him to I–A in June 1967. Cf. Yates v. United States, 404 F.2d 462 (1st Cir. 1968), reh'g denied, 407 F.2d 50 (1968); Steele v. United States, supra. Even if appellant had made such a showing, his failure to appeal his June 1967 I–A classification might present substantial obstacles to any claim that the local board should have been afforded an opportunity to reconsider the case prior to induction.

7. Considering the December 13, 1967 list alone, we note that although there were

Appellant has not attempted to show where he was prejudiced by lack of a board meeting or resolution ordering him to report. His case is simply that under the law the act of a clerk in compiling a delivery list and sending the orders to report for induction is a nullity. We readily concede the importance of the board and only the board acting on all matters involving discretion. The availability of delinquents and volunteers not yet found acceptable would present issues for the board's discretion, as would any new information bearing on the status of any registrant being considered for induction. Indeed, just as we said in United States v. Stoppelman, *supra*, 406 F.2d at 130, that "clerks file such communications [from registrants] without calling them to the board members' attention at considerable risk to the validity of subsequent proceedings", we say here that when local boards entrust the preparation of delivery lists and issuance of orders to report to their clerks, they do so at very considerable peril to the validity of the orders.

Where, as here, both the testimony and the documentary evidence reveal that no discretionary act was performed by the clerk, we see no reason in law or in policy to declare the order invalid. Section 1604.52a(c), on which appellant relies as underscoring the importance of action by the full board, does not seem inconsistent with our position. For this section calls for determination "by the local board as a whole" of "all questions arising in the selection of registrants * * * for induction * * *." See *also* 50 U.S.C. App. § 460(b) (3). We deem it reasonable to say that by definition matters purely ministerial do not rise to the level of "questions".

The cases cited by appellant—principally *Brede I and II* and Cupit v. United States, 292 F.Supp. 146 (W.D.Wis. 1968)—deserve careful scrutiny.[8] In *Brede I* the court held that an order to a I–O registrant, to report for a civilian work assignment, issued by a clerk, after the meeting required by § 1660.20(c) had been held and subsequent approval of that assignment had been received from Selective Service authorities, was not a board "order". In *Brede II* the court on rehearing amended its opinion by making clear that the order to report could be made, contingent on later authorization, at the § 1660.20(c) meeting. It then reaffirmed its prior decision of acquittal, not finding in the record any evidence of administrative practice which would provide the basis for concluding that there had been an implied order on the occasion of the meeting or any evidence "from which it might be found that the critical exercise of administrative judgment had been made." *Brede II, supra,* 400 F.2d at 600.[9]

---

ten registrants older than Powers, four of them were entitled to I–S deferments and hence could ultimately not be used to satisfy the board's quota. 32 C.F.R. §§ 1622.15, 1625.3(b). Adding the two registrants older than Powers on the December 20, 1967 list to the six remaining older registrants on the December 13 list, we can see that Powers of necessity had to be called if the board were to fulfill its quota of ten men.

8. We agree with appellant that *Brede I* is not to be distinguished, as the government has argued, on the difference in literal language between regulations 1660.20 and 1631.7, i. e., the presence of the requirement in § 1660.20(c), not present in 1631.7 that the board "shall meet" with the I–O registrant and state selective service representative to try to work out

a mutually acceptable civilian work assignment. In both *Brede* and *Cupit* such a meeting had been held. The defect found by the court in each case was that the board did not subsequently, after receiving approval of a specific work assignment, meet and order the registrant to report or, alternatively, did not, at the meeting required by § 1660.20(c), conditionally authorize an order to report for specific work.

9. In *Brede I*, the court refers to the fact that at the meeting "the board determined that work as an institutional helper at the Los Angeles County Department of Charities * * * was appropriate for the appellant and that such work was available." 396 F.2d at 157. We can reconcile *Brede II's* holding that this was not a "critical exercise of administrative

We agree with this latter requirement that the local board must itself perform any critical exercise of administrative judgment. Failure so to act accounts for the decision in Cupit v. United States, *supra*, where the only resolution of the local board at the § 1660.20(c) work assignment meeting was to request approval of "appropriate work, Evanston Hospital Association". The court found that at no time did the local board "deliberate upon and approve a reasonably definite and precise proposition that the petitioner was required to report at a given time and place in order to perform a given type of civilian work." *Id.* at 251.[10] But in the case at bar, as we have implied, the critical exercise of judgment was made at the time of appellant's reclassification and no subsequent occasion for the exercise of judgment arose.

In sum, we are persuaded to adopt a rationale not unlike that of Yates v. United States, 404 F.2d 462 (1st Cir. 1968), reh'g denied, 407 F.2d 50 (1968). In that case we held that the presumption of regularity, without more, will allow the government to go to the jury on the issue of proper order of call, in the absence of any claim of improper order by a defendant. Here we are dealing with an equally important principle. We do not say that there is any presumption that an order to report issued by a clerk without board participation involved no discretion. But when the evidence discloses no act of discretion which could possibly have prejudiced a defendant as to either the fact or the timing of his being ordered to report, we see no failure of the board to pass on

"all questions arising in the selection of 32 C.F.R. § 1604.52a(c) and hence no [the] registrant for induction * * *.", violation of the regulations. To rule as a matter of law that every order to report must be the subject of board action seems to us a requirement unnecessarily burdensome on local boards and not demanded by the duty to treat registrants fairly.

Affirmed.

---

judgment" with Davis v. United States, 402 F.2d 513 (5th Cir. 1968) and United States v. Crowley, *supra*, only on the ground that in the latter two cases the local board also offered the employment to the registrant at the meeting. The nature of the work assignments decided upon in each case seems substantially equivalent: "institutional helper * * * Department of Charities" (*Brede I*); "rehabilitation work at * * * State Hospital" (*Davis*); "highway work" with Department of Highways (*Crowley*).

Indeed the work assignment in *Brede I* was virtually identical to that found sufficiently precise in United States v. Mendoza, 295 F.Supp. 673 (E.D.N.Y. 1969): "institutional work at * * * State Hospital."

10. To the extent that *Cupit* stands for more than requiring a local board to exercise its judgment on the kind of civilian work to be required of a I–O registrant, our silence is not to be read as agreement.