**UNITED STATES of America,
Appellee,**

**v.**

**Thomas Robert HOSMER, Defendant,
Appellant.**

**No. 7639.**

United States Court of Appeals,
First Circuit.

Dec. 4, 1970.

**210**

U. Charles Remmel, II, Portland, Me., by appointment of the Court, with whom Thompson, Willard, Hewes & Smith, Portland, Me., was on brief for defendant-appellant.

Roy R. Bartlett, Associate Gen. Counsel, Selective Service System, with whom Clarence R. Harris, Asst. Gen. Counsel, Selective Service System, Washington, D. C., and Peter Mills, U. S. Atty., Portland, Me., were on brief, for appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

McENTEE, Circuit Judge.

Defendant was convicted of refusing to submit to induction into the armed forces of the United States in violation of 50 U.S.C. App. § 462(a) (1964). He had duly registered with his local draft board in Kennebunk, Maine, on August 29, 1961, shortly after his eighteenth birthday. From January 1964 until August 1968 he held a student deferment, except for a brief period during the winter of 1964–65 when he was reclassified I-A apparently because he had dropped out of college. On September 30, 1968, the local draft board ordered him to report for induction on October 23. But upon learning that he had obtained employment as a teacher at the Hampshire Country School in Rindge, New Hampshire, the board postponed his induction until June 1, 1969.

On May 6, 1969, defendant was ordered to report for induction on June 19. Three days later he wrote to the local board claiming a recurrence of a past knee injury, which he substantiated by letters from two doctors. On June 11 the board arranged for defendant's knee to be examined by an orthopedic specialist in Portland, Maine. Subsequent to that examination, he "fled" to Canada for two weeks and failed to report for induction on June 19. On June 30 he appeared at the local board office and informed the clerk that he had "evaded the draft." Upon his request for a new induction date, he was ordered to report on August 27. Defendant was notified on July 1 that the Portland physician had found him physically qualified to serve in the armed forces, and on August 26 he wrote to the Surgeon General's office in Hampton, Virginia, complaining that he had not been properly examined. He reported for induction on August 27, was found qualified but, after all of the proper warnings, refused to step forward.

On September 17 defendant was interviewed by a Special Agent of the Federal Bureau of Investigation. He was arrested on October 14, prior to which time he had consulted a Portland and also a Boston attorney. On October 24 he wrote the local board, "I believe that I am a Conscientious Objector." The board promptly mailed him SSS Form 150, the "Special Form for Conscientious Objectors," which he filled out and re-

turned. In that form defendant stated that, although he practiced no religion at all, his beliefs in non-violence were "sincere and meaningful" so as to meet the test, as explained to him by his lawyer, laid down in United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965). He took the position that he had not been a conscientious objector prior to his arrest, explaining "My beliefs were dormant as far as having the depth of conviction I now feel which probably were (sic) catalyzed into deep conviction as a result of my refusal to be inducted and subsequent indictment." On December 29, the local board granted defendant a "courtesy appearance" [1] but denied a request by his Portland attorney to be present. On January 6 the board wrote the defendant as follows:

"As a result of a courtesy appearance on December 29, 1969, and having carefully examined all evidence in support of your claim of conscientious objector, the local board determined not to reopen your classification, inasmuch as there have been no circumstances beyond your control which arose since you were mailed an order to report for induction on September 30, 1968." [2]

■ Defendant's principal argument can be summarized as follows: (1) Upon his submission of the SSS Form 150, the local board was required to reopen his classification; or, alternatively, even if not required to do so, the board did reopen his classification de facto at his "courtesy appearance." (2) The reopening of his classification cancelled his Order to Report for Induction. 32 C.F.R. § 1625.14 (Supp.1970). (3) He cannot be convicted of refusing to submit to an induction order that has been cancelled. Assuming, for the moment, that the first two points of this argument are correct, the third clearly is not. Defendant does not contend that the induction order was defective at the time he refused to submit to it. On the contrary, he claims that his conscientious objection "crystallized" after that date. *Cf.* United States v. Stoppelman, 406 F.2d 127, 131 n. 7 (1st Cir.), cert. denied, 395 U.S. 981, 89 S.Ct. 2141, 23 L.Ed.2d 769 (1969); United States v. Stafford, 389 F.2d 215, 218 (2d Cir. 1968). As we said in United States v. Powers, 413 F.2d 834 (1st Cir.), cert. denied, 396 U.S. 923, 90 S.Ct. 923, 24 L.Ed.2d 205 (1969), "once a valid order to report for induction has been wilfully disobeyed, a crime has been committed, and '[w]hat occurs after refusal * * * is not relevant to that issue.'" *Id.* at 838. *Accord,* United States v. Stoppelman, *supra,* at 406 F.2d 131–133; Palmer v. United States, 401 F.2d 226 (9th Cir. 1968); United States v. Stafford, *supra* (by implication); Davis v. United States, 374 F.2d 1, 4 (5th Cir. 1967). Thus, even if defendant is correct that his induction order should have been cancelled in January 1970, he would still be guilty of refusal to submit to induction in August 1969 when his induction order was admittedly valid.

Moreover, we conclude that defendant's contention that his induction order should have been cancelled in January 1970 is also incorrect. Because defendant has raised some important questions about the meaning of Mulloy v. United States, 398 U.S. 410, 90 S.Ct. 1766, 26 L.Ed.2d 362 (1970), and other recent court cases, we will review this issue briefly. In doing so, we conclude that

---

1. A "courtesy appearance" is authorized by 32 C.F.R. § 1625.1(c) (Supp.1970) and is to be distinguished from a "personal appearance" to which defendant would have been entitled had the board decided to reopen his classification. *See* 32 C.F.R. §§ 1625.13 and 1624.1 (Supp. 1970).

2. The board applied the standard set out in 32 C.F.R. § 1625.2, which provides that "the classification of a registrant shall not be reopened after the local board has mailed to such registrant an Order to Report for Induction * * * unless the local board first specifically finds there has been a change in the registrant's status resulting from circumstances over which the registrant had no control."

defendant's local board acted properly in every respect.

█ Defendant bases his contention that the local board was required to reopen his classification on Mulloy v. United States, *supra.* In that case the Supreme Court held that a local board is required to reopen a registrant's classification if he presents a prima facie case for reclassification which is not "plainly incredible, or * * * conclusively refuted by other information in the applicant's file." *Id.* at 418 n. 7, 90 S.Ct. at 1772. The government contends that the *Mulloy* ruling does not apply to a request for reclassification made after the registrant's induction order has been issued, citing Paszel v. Laird, 426 F.2d 1169 (2d Cir. 1970).[3] We note that most courts that have been faced with this issue have not followed *Paszel,* concluding instead that a modified version of the *Mulloy* rule applies during the period after the induction order has been issued but prior to the induction date itself. See note 3 *supra.* Nevertheless, we see no indication in *Mulloy* that we should overturn the well settled rule that a registrant's right to have his classification reconsidered ceases after he refuses to submit to induction. *See* United States v. Powers, *supra,* and cases cited with it.

In view of our conclusion that defendant's claim, even if proved, would not constitute a defense to the crime charged, we see no need to reach the other arguments he has raised.

Affirmed.

3. Relying on 32 C.F.R. § 1625.2 (Supp. 1970), quoted note 2 *supra, Paszel* held that, after the induction order has been issued, the local board cannot reopen a classification until it has reviewed the entire case on its merits. Under the *Paszel* rule, a decision to reopen would require the same quantum of evidence as a decision to reclassify. *Id.* at 1174. This holding would appear to conflict with dictum in Mulloy v. United States, *supra,* in which the Supreme Court stressed that "evaluative" issues, such as registrant's demeanor and sincerity, should be reviewed *after* his case has been reopened so that he can be accorded the rights of personal appearance and appeal, 32 C.F.R. § 1625.13 (Supp.1970). *Id.* 398 U.S. at 416, 417, 90 S.Ct. 1766. The requirement that the board must find a "change in circumstances" before reopening a post-induction order case (32 C.F.R. § 1625.-2) and the *Mulloy* dictum were reconciled by the Tenth Circuit in United States ex rel. Brown v. Resor, 429 F.2d 1340 (10th Cir. 1970). *See also* Lubben v. Selective Service System, Local Board No. 27, 316 F.Supp. 230 (D.Mass.1970); Lane v. Local Board No. 17, 315 F.Supp. 1355 (D.Mass.1970).