**UNITED STATES of America**

v.

**Guy Michael QUATTRUCCI.**

**Crim. A. No. 71–16.**

United States District Court,
D. Maine, S. D.

June 9, 1971.

Peter Mills, U. S. Atty., John B.
Wlodkowski, Asst. U. S. Atty., Portland,
Me., for plaintiff.

Harriett F. Hunt, Portland, Me., for
defendant.

MEMORANDUM OF OPINION AND
ORDER

GIGNOUX, District Judge.

Guy Michael Quattrucci was indicted for refusing to submit to induction into the armed forces of the United States in violation of 50 U.S.C. App. § 462(a) (1967). He has been tried by the Court without a jury. His principal defense is the alleged invalidity of his induction order because of the failure of his local Selective Service Board to take affirmative action with respect to letters in his Selective Service file setting forth information which he claims entitled him to a I–O classification as a conscientious objector or to a IV–F classification as psychologically not qualified for military service. Mulloy v. United States, 398 U.S. 410, 90 S.Ct. 1766, 26 L.Ed.2d 362 (1970) ; United States v. Ford, 431 F.2d 1310 (1st Cir. 1970). *See* United States v. Stoppelman, 406 F.2d 127, 130–131 (1st Cir.), cert. denied, 395 U.S. 981, 89 S.Ct. 2141, 23 L.Ed.2d 769 (1969). He also contends that the evidence does not support a finding that his failure to submit to induction was "willful." United States v. Krosky, 418 F.2d 65, 67 (6th Cir. 1969). The relevant record consists of the Selective Service file as supplemented by testimony of the State Selective Service Director ; the Executive Secretary, Clerical Assistant and two members of defendant's local Selective Service Board ; the Commanding Officer and Chief Medical Officer of the Armed Forces Examining and Entrance Station (AFEES) ; and the defendant.

The essential facts are undisputed. Defendant registered with his local Selective Service Board in Augusta, Maine on August 17, 1965, shortly after his eighteenth birthday. On September 22, 1965, he filed the standard Classification Questionnaire (SSS Form 100), in which he stated that he was a full-time student at Northeastern University. He made no claim for conscientious objector status and disclaimed any disqualifying physical or mental condition at the time. From October 21, 1965 un-til June 2, 1970, he held a student (II–S) deferment, except for brief periods in the fall of 1967 and the early winter of 1968–69 when he was reclassified I–A (Available for military service), apparently because he had dropped out of college.

On December 29, 1969, defendant's local Selective Service Board ordered him to report for a pre-induction physical examination at AFEES on January 14, 1970, an appointment which defendant failed to keep. Instead, defendant caused to be sent to his local board letters from two doctors concerning emotional and mental disorders he had experienced in 1967. The first, a letter dated January 13, 1970 from the Massachusetts Mental Health Center, stated that defendant had been treated at the Center in July and October 1967, at which time his determined diagnosis was: "(1) Post L.S.D. syndrome (2) Obsessive compulsive personality structure." The letter further related that defendant had been given some medication and told to return if another reaction occurred, but that he had not again returned to the Center. The second letter, dated January 27, 1970 from the Northeastern University Health Services, reported that defendant had been treated for a series of episodes in the early summer of 1967 involving obsessive thoughts and hallucinations ; that he had used LSD and marijuana ; and that he had been on July 24, 1967 referred to the Massachusetts Mental Health Center. These letters were included in defendant's Selective Service file, but were not brought to the attention of the Board.

On February 8, 1970, defendant wrote his local board "purely by way of statement" that he functioned upon a "basic natural freedom—freedom of personal choice" ; that his "aim, if not specifically for peaceful co-existence, is toward a peaceful personal existence" ; that he retained "the right to make my own choices as far as is naturally, rationally, and reasonably possible" ; and that he chose "to neither condone nor consent to the concept known as the United States

of America Armed Services because I interpret their ultimate aims to be collective forced coercion, violence, killing and death." Defendant did not claim conscientious objector status, nor did he request SSS Form 150, the "Special Form for Conscientious Objector." This letter was not brought to the attention of the Board, and no Form 150 was sent to defendant.

On March 23, 1970 defendant was again ordered to report, and did report, for a physical examination on April 21. He was found "acceptable," but the examining doctor noted that defendant had claimed unverified ailments "re: drug psychosis" and had been advised to present substantiating documentary evidence. At defendant's request the two doctors' letters, which had not been available to the examining doctor on April 21, were sent by the Clerk to AFEES with a request for a reevaluation of defendant. They were marked "Reviewed and considered" by the Chief Medical Officer on May 1, 1970, when defendant was again found acceptable for induction. On May 8, 1970 the local board mailed defendant the customary "Statement of Acceptability" (DD Form 62).

On June 2, 1970, the local board reclassified defendant I–A. So far as the record discloses, neither the doctors' letters of January 13 and 27 nor defendant's letter of February 8 were presented to or considered by the Board at this time. On the following day defendant was notified of his I–A classification and also of his right to a personal appearance before the local board and to appeal to the State Appeal Board within 30 days. 32 C.F.R. §§ 1624.1, 1626.2. Defendant did not, however, either request a personal appearance or appeal his classification, and on July 6 he was ordered to report for induction on July 23. On July 23 defendant reported for induction, was found qualified, but after all the proper warnings, refused to step forward. On January 22, 1971, his indictment and this prosecution followed.[1]

Defendant's major argument is that upon receipt of the doctors' letters of January 13 and 27 and defendant's letter of February 8, the local board was required to consider the merits of his claims pursuant to 32 C.F.R. § 1625.2, or at least, in response to defendant's February 8 letter, to send him a Form 150 in accordance with 32 C.F.R. § 1621.11 and LBM 41. He contends that the failure of the local board thus to consider and act upon these letters invalidated his induction order. The basis of his position is United States v. Ford, *supra*, in which the Court of Appeals, applying the rationale of Mulloy v. United States, *supra*, held that a local board is required to reopen a registrant's classification if he presents a prima facie case for reclassification which is not " 'plainly incredible, or * * * conclusively refuted by other information in the applicant's file.' " 431 F.2d at 1312.

Defendant's argument is fatally defective in two respects. In the first place, it can hardly be said that the letters upon which defendant relies presented a prima facie case for his reclassification. The two doctors' letters state only that defendant had been treated for a post-LSD syndrome some two and one-half years previously and indicate on their face that defendant had been released from treatment and had not returned for further treatment, even though told to do so in the event of a re-

---

I. On February 20, 1971, subsequent to his indictment, defendant for the first time requested SSS Form 150. He completed and returned the form on March 30, but was advised by the Board that since he was then under indictment his case was under the jurisdiction of the United States Attorney. Defendant does not contend that the Board acted improperly in failing to act on this post-indictment

claim. Ehlert v. United States, 402 U.S. 99, 91 S.Ct. 1319, 28 L.Ed.2d 625 (April 21, 1971); United States v. Pringle, 438 F.2d 1216 (1st Cir. March 11, 1971); United States v. Hosmer, 434 F.2d 209 (1st Cir. 1970); United States v. Holmes, 426 F.2d 915, 918 n. 2 (2d Cir. 1970), remanded for reconsideration 402 U.S. 969, 91 S.Ct. 1644, 29 L.Ed.2d 134 (1971).

occurrence. Similarly, defendant's letter of February 8 nowhere indicates that defendant's professed belief in "freedom of personal choice" and a "peaceful personal existence" constituted opposition to "participation in war in any form," Gillette v. United States, 401 U.S. 437, 91 S.Ct. 828, 28 L.Ed.2d 168 (March 8, 1971), or rose to the level of a "deeply held moral, ethical, or religious" belief which would have entitled him to conscientious objector status even under the liberalized standard of Welsh v. United States, 398 U.S. 333, 344, 90 S.Ct. 1792, 1798, 26 L.Ed.2d 308 (1970).

 In the second place, even if the letters might be considered to present a prima facie case of entitlement to a different classification, in the present case, unlike *Ford* and *Mulloy*, defendant was not classified I-A until June 2, 1970, some four months after the Board received the communications in question. Under these circumstances, defendant's present challenge to the validity of his classification and subsequent induction order is barred by his failure either to request a personal appearance before his local board or to appeal his classification to the State Appeal Board. United States v. Pringle, 438 F.2d 1216 (1st Cir. March 11, 1971); United States v. Powers, 413 F.2d 834, 837 (1st Cir.), cert. denied, 396 U.S. 923, 90 S.Ct. 256, 24 L.Ed.2d 205 (1969). As the Court of Appeals most recently observed in *Pringle*, "a registrant cannot normally have a court finding that he was improperly classified unless he has pursued his administrative remedy on the issue." 438 F.2d at 1217. And here, as in *Pringle*, defendant's reliance on McKart v. United States, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969), is misplaced. In *McKart*, the Supreme Court held that a registrant was not required to exhaust administrative remedies where the issue raised was "solely one of statutory interpretation." 395 U.S. at 197–198, 89 S.Ct. 1657. The Court, however, expressly distinguished factual findings and discretionary determinations requiring Board expertise, and noted that conscientious objector claims typically require Board expertise and discretion, making such cases singularly appropriate for the requirement that administrative remedies be exhausted. 395 U.S. at 198 n. 16, 89 S.Ct. 1657. *See* United States v. Pringle, *supra*, 438 F.2d at 1217. Indeed, in McGee v. United States, 402 U.S. 479, 91 S.Ct. 1565, 29 L.Ed.2d 47 (May 17, 1971), the Supreme Court's most recent review of the place of the exhaustion doctrine in Selective Service cases, the Court held that a registrant's failure to exhaust his administrative remedies, thereby precluding the Selective Service System from developing the facts and using its expertise in assessing a claim for conscientious objector status, barred the defense of incorrect classification in a subsequent criminal prosecution. In the case at bar, defendant's claims for a conscientious objector classification or for a physical deferment presented precisely the type of factual and discretionary questions that should be subjected to full administrative review within the Selective Service System before the action of the local board may be challenged in defense to a criminal prosecution. Even before *McGee*, the lower federal courts since *McKart* consistently have held that a registrant's failure to exhaust his administrative remedies precludes him from raising the defense of improper classification in a subsequent criminal prosecution where conscientious objection and similar factual issues are presented. *E. g.*, United States v. Pringle, *supra*; United States v. Thompson, 431 F.2d 1265, 1270 (3rd Cir. 1970); United States v. Houston, 433 F.2d 939 (2d Cir. 1970); Alexander v. United States, 435 F.2d 117 (9th Cir. 1970); Lockhart v. United States, 420 F.2d 1143 (9th Cir. 1970); United States v. Smogor, 415 F.2d 296 (7th Cir.), cert. denied, 396 U.S. 972, 90 S.Ct. 460, 24 L.Ed.2d 440 (1969); United States v. Brooks, 415 F.2d 502 (6th Cir. 1969), cert. denied, 397 U.S. 969, 90 S.Ct. 1003,

25 L.Ed.2d 263 (1970).[2] In so holding, several courts have stressed that the exhaustion requirement is necessary in such cases in order that the Selective Service System be given a chance to correct its own errors. United States v. Houston, *supra*, 433 F.2d at 941; United States v. Williams, 317 F.Supp. 1363, 1367 (E.D.Pa.1970). See McGee v. United States, *supra*, 91 S.Ct. at 1568; McKart v. United States, *supra*, 395 U.S. at 199–200, 89 S.Ct. 1657. In the circumstances of the present case, it is apparent that defendant's failure to exhaust deprived the Appeal Board of the opportunity to rectify any error the local board may have made.[3]

 Defendant's contention that he lacked the requisite criminal intent when he refused to submit to induction on July 23, 1970 requires only brief discussion. There can be no question that defendant was fully aware of his obligation to comply with his induction order and acted knowingly and willfully when he refused to step forward. No more than this is required. United States v. Rabb, 394 F.2d 230, 231–232 (3rd Cir. 1968); Graves v. United States, 252 F. 2d 878, 881–882 (9th Cir. 1958); United States v. Hoffman, 137 F.2d 416, 419 (2d Cir. 1943); United States v. Hosmer, 310 F.Supp. 1166, 1171 (D.Me.), aff'd, 434 F.2d 209 (1st Cir. 1970).

The Court finds that on July 23, 1970 at Portland, Maine, the defendant willfully and knowingly refused to comply with a valid order of his local Selective Service Board to submit to induction into the armed forces of the United States in violation of 50 App. U.S.C. § 462(a). Defendant's motion for judgment of acquittal is denied. The Court finds defendant guilty of the offense charged in the indictment.

2. Although United States v. Davila, 429 F.2d 481 (5th Cir. 1970) and United States v. Eades, 430 F.2d 1300 (4th Cir. 1970) excused the failure to exhaust administrative remedies under *McKart* even though conscientious objection issues were involved, both courts premised their conclusion upon a determination that the facts were undisputed and the only question presented was whether the defendant's views entitled him to conscientious objector status under the law.

3. Defendant argues that he was misled by a clerical assistant at his local board on May 1, 1970, when he was told that the determination of his medical condition was in the hands of AFEES. He says that he therefore believed that AFEES was his only recourse on medical issues and thus did not appeal his subsequent I-A classification. Defendant does not deny, however, that when he was reclassified I-A on June 2, 1970, he was advised of his right to a personal appearance and to appeal. On this record defendant's present claim that he was misled cannot be accepted. *Cf.* United States v. Powers, *supra*, 413 F.2d at 837. Furthermore, he does not argue that he was misled into failing to appeal with respect to his conscientious objector claim, and hence that claim is clearly barred by the failure to appeal.