**UNITED STATES of America**

v.

**Ramon RUEDA, Defendant.**

**No. 73 Cr. 7.**

United States District Court,
S. D. New York.

April 19, 1974.

---

Paul J. Curran, U. S. Atty., S. D. N. Y. (George E. Wilson, Asst. U. S. Atty., of counsel), for United States.

Levy, Gutman, Goldberg & Kaplan, New York City (Donald L. Doernberg, Eugene N. Harley, Jeremiah S. Gutman, New York City, of counsel), for defendant.

BAUMAN, District Judge.

Ramon Rueda was indicted in three counts for failing to report for induction into the Armed Forces in violation of 50 U.S.C.App. § 462(a) [1] and 32 C.F.R. § 1632.14.[2] He was tried before this court, sitting without a jury, and at the conclusion of the trial I found the defendant not guilty as to Count 1. What follows constitutes my findings of fact and conclusions of law with respect to Counts 2 and 3.

Defendant Rueda was born May 30, 1948. On or about June 6, 1966, he registered with Selective Service System Local Board No. 28, located at 1910 Arthur Avenue, Bronx, New York. He was classified 1–A on July 14, 1966 and then reclassified 2–S on January 19,

1. 50 U.S.C.App. § 462(a) provides, in pertinent part:

"\* \* \* Any person \* \* \* who in any manner shall knowingly fail or neglect or refuse to perform any duty required of him under or in execution of this [Act], or rules, regulations, or directions made pursuant to this [Act] \* \* \*, (is guilty of a crime)."

2. 32 C.F.R. § 1632.14 provides, in pertinent part:

"§ 1632.14 Duty of registrant to report for and submit to induction.

(a) When the local board mails to a registrant an Order to Report for Induction (SSS Form No. 252) or an Order for Transferred Man to Report for Induction (SSS Form No. 253), it shall be the duty of the registrant to report for induction at the time and place fixed in such order. If the time when the registrant is ordered to report for induction is postponed, it shall be the continuing duty of the registrant to report for induction upon the termination of such postponement and he shall report for induction at such time and place as may be fixed by the local board. Regardless of the time when or the circumstances under which a registrant fails to report for induction when it is his duty to do so, it shall thereafter be his continuing duty from day to day to report for induction to his local board and to each local board whose area he enters or in whose area he remains.

(b) Upon reporting for induction, it shall be the duty of the registrant (1) to follow the instructions of a member or clerk of the local board as to the manner in which he shall be transported to the location where his induction will be accomplished, (2) to obey the instructions of the leader or assistant leaders appointed for the group being forwarded for induction,, (3) to appear at the place where his induction will be accomplished, (4) to obey the orders of the representatives of the Armed Forces while at the place where his induction will be accomplished, (5) to submit to induction, and (6) if he is found not qualified for induction, to follow the instructions of the representatives of the Armed Forces as to the manner in which he will be transported on his return trip to the local board."

1967 when the board received a notification that he was a full time student at the State University of New York at Farmingdale. The 2–S classification was renewed on December 14, 1967 upon receipt of another notice stating that defendant was still a full time student and was expected to graduate in June, 1968.

■ Defendant did not graduate that June. It appears that, in September, 1968 he commenced work as a laboratory technician at the New York Medical College and continued his studies part time. Accordingly when the board received notice from the State University that he was no longer a full time student it reclassified him 1–A on November 20, 1968. Defendant subsequently was ordered to report for a pre-induction physical examination, which he passed in March, 1969. On April 26, 1969 the board mailed defendant an order to report for induction on May 15, 1969. This he failed to do, and this failure is alleged as the basis of Count 1. The notice, however, was mailed to the address from which defendant had moved some months before. Defendant had notified the board of his change of address in December, 1968, but the board overlooked this fact. Accordingly, I concluded at the trial that the government had failed to sustain its burden of proving beyond a reasonable doubt that defendant had received this notice, and I dismissed Count 1.

On July 28, 1969 the board mailed, to the proper address, a second order to report for induction, on August 19, 1969. The defendant again failed to report, and this failure formed the basis of Count 2.

On October 9, 1969 the board received from the defendant a request for a student deferment, and on October 15, 1969, received notification from C. W. Post College of Long Island University that he had enrolled in the first year class in September, 1969. Almost simultaneously, on October 13, the board mailed to the United States Attorney for the Southern District of New York a "Delinquent Registrant Report," which charged the defendant with twice having failed to report for induction. The board was notified on November 24, 1969 that because the defendant was then a full time student, the United States Attorney had declined prosecution. On December 18, 1969 defendant was given a 2–S classification valid through October, 1970.

The board received no notification in October, 1970 of defendant's current status and again reclassified him 1–A on November 19, 1970. On December 23, 1970 a notice requiring him to report for induction on January 14, 1971 was mailed and the third count of the indictment is based upon his failure to report on that occasion.[3]

## I.

■ Defendant bases his argument for dismissal of the second count on 32 C.F.R. § 1625.14.[4] Under that regulation, he contends, the action of the board in reclassifying him 2–S on December 18, 1969 not only cancelled the July 28 induction order, but also absolved him of any delinquency in failing to obey it. The argument is flawed; the regulation merely serves to terminate a registrant's ongoing obligation to comply with an induction order. Nothing in its language or in the manner in which it has been construed by the courts suggests that it operates retroactively to absolve a regis-

3. Defendant did not testify in his own behalf nor did he offer any evidence in his own defense as, of course, was his right.

4. 32 C.F.R. § 1625.14 in effect in 1969 provides as follows:
"§ 1625.14 Cancellation of Order to Report for Induction or for Civilian Work by reopening of classification.
The reopening of the classification of a registrant by the local board shall cancel any Order To Report for Induction (SSS Form No. 252) or Order To Report for Civilian Work and Statement of Employer (SSS Form No. 153) which may have been issued to the registrant, except that if the registrant has failed to comply with either of those orders, the reopening of his classification thereafter by the local board for the purpose of placing him in Class IV–C or Class V–A shall not cancel the order with which he failed to comply."
This regulation survives today in a slightly revised form.

trant of criminal responsibility for a previous failure to report for induction.

Indeed, the precise construction of § 1625.14 urged by defendant was rejected by the Third Circuit in United States v. Noonan, 434 F.2d 582 (3rd Cir. 1970), cert. denied, 401 U.S. 981, 91 S.Ct. 1190, 28 L.Ed.2d 333 (1971). The court reasoned as follows:

"We find neither logical nor statutory support for appellant's conclusion. Apparently the purpose of the specific reference to Classes IV-C and V-A is an explicit warning that any registrant who acquires alien or overage status after the date of the scheduled induction may obtain no relief by seeking a reopening of his classification. To apply appellant's reasoning would be to conclude that all reopenings, except those which contemplate a IV-C or V-A classification, automatically cancel induction orders which have been violated. Other than the obvious havoc this procedure would wreak in the selective service system, this construction of § 1625.14 would mean that a subsequent reopening of a classification would have the legal effect of quashing an indictment before trial, or of arresting a conviction and perhaps setting aside a decision of the court of appeals, or, indeed, of the United States Supreme Court. This regulation simply does not invest local boards with such prerogatives of pardoning power." 434 F.2d at 585.

The conclusion that a subsequent reclassification does not expunge prior disobedience of an induction order has now been embraced by several Courts of Appeals. See United States v. Roberts, 443 F.2d 1009 (8th Cir. 1971); United States v. Hosmer, 434 F.2d 209 (1st Cir. 1970), cert. denied, 401 U.S. 978, 91 S.Ct. 1209, 28 L.Ed.2d 328 (1971); United States v. Pringle, 438 F.2d 1216 (1st Cir. 1971); United States v. Powers, 413 F.2d 834 (1st Cir.), cert. denied, 396 U.S. 923, 90 S.Ct. 256, 24 L.Ed.2d 205 (1969); United States v. Smogor, 411 F.2d 501 (7th Cir. 1969), rehearing denied, 415 F.2d 296 (7th Cir. 1969), cert. denied, 396 U.S. 972, 90 S.Ct. 460, 24 L.Ed.2d 440 (1969); United States v. Hunter, 482 F.2d 623 (3rd Cir. 1973).[5]

Although the Second Circuit has not confronted the issue squarely, a recent decision in this district also supports the construction heretofore advanced. In United States v. Hughes, 364 F.Supp. 310 (S.D.N.Y.1973), defendant argued

---

5. In support of his construction of 32 C.F.R. § 1625.14, defendant relies largely on the rather puzzling case of Palmer v. United States, 401 F.2d 226 (9th Cir. 1968). The case presents difficulty because the text of the opinion appears to point one way, the footnotes another. In *Palmer* the court held simply that the local board was not required to consider a claim of conscientious objections filed after a registrant had refused to submit to induction. In reaching this conclusion, the court stated: "[t]he question for the court is simply whether at the time of refusal to submit to induction the registrant was under a duty to submit. If he was, a crime was then committed . . . . What occurs after refusal, however, is not relevant." The court, however, added the following footnote: "The board may (as 32 C.F.R. § 1625.14 seems to recognize) have *power* to reopen classification even after the registrant has refused to submit to induction and power thereby to cancel the induction order with which the registrant has refused to comply. This power is, if exercised, no more than a *sua sponte* response by the board to a re-examination of its own proceedings. The registrant, however, has no right to a reopening at this time. If the board chooses to stand on its record the registrant cannot assert prejudice resulting from that choice."

These two statements can only be harmonized by adopting the construction of § 1625.14 that I have already suggested, i. e. that a reclassification terminates a continuing obligation, but does not absolve a registrant of prior disobedience to a lawful order. Thus construed, *Palmer* affords no support to defendant's position here. However, different courts have cited *Palmer* for different propositions, depending on whether reference was made to the text or the footnote. Compare United States v. Roberts, supra, United States v. Hosmer, supra, and United States v. Noonan, supra, all of which cite *Palmer* in support of the proposition that a subsequent reclassification cannot expunge a prior conviction, with United State v. Lloyd, 431 F.2d 160 (9th Cir. 1970) and United States v. Jenson, 450 F.2d 1258 (9th Cir. 1971), which appear to cite it for the opposite proposition. Because I believe that these latter cases misconstrue *Palmer*, I decline to follow them.

that a July induction order which he had disobeyed was cancelled by his Local Board's subsequent consideration of his claim for deferment as a conscientious objector. The district court held that this claim was not sufficient to entitle him to a reopening of his classification. The court added that "even had such a reopening occurred, it would not have voided the prior violation of the order of July 16. Once defendant disobeyed 'that order, he became subject to indictment and prosecution for that act, and '[w]hat occurs after refusal is not relevant to that issue' (citing United States v. Powers, supra, 413 F.2d at 838.)." The Court of Appeals affirmed, 490 F.2d 597 (2nd Cir. 1974), but its brief *per curiam* opinion did not address this question.

Equally untenable is defendant's argument that the United States Attorney's refusal to prosecute in November, 1969, amounts to an estoppel which now prevents the government from prosecuting him for his failures to report prior to November. In United States v. Ware, 473 F.2d 530 (9th Cir. 1973), the defendant had twice failed to report for and once failed to complete his preinduction physical examination. When the matter was referred to the United States Attorney for prosecution, he declined prosecution and instead recommended that the local board permit the defendant yet another opportunity to report. After reporting and again refusing to complete his examination, defendant was subsequently indicted for all four violations. The Ninth Circuit, through Judge Lumbard sitting by designation, rejected the argument that this constituted a waiver of his previous violations of the law. The court stated: "Appel-

lant has cited us to no authority in support of his waiver proposition and we conclude that it is wholly without merit. Indeed, even if Ware had complied with the law on his fourth chance, . . . which he did not do, this would not have eliminated the earlier noncompliance, for '[d]efendant has no more right to absolve himself of the crime he has committed than has any other law violator, as for example one guilty of larceny by making restitution.' (citation omitted)." I have concluded that defendant's waiver argument is similarly unavailing here. In this situation, it is not the function of a court to pass upon the wisdom with which the prosecutor exercises his discretion. The court can only assess its legal effect, if any. Therefore, having concluded that the defenses raised are legally insufficient, I find the defendant guilty as charged in Count 2.

## II.

Defendant's argument in support of dismissal of the third count is a variation of the now familiar order of call defense. A brief survey of the regulations governing selection procedures in 1970 and 1971 provides some necessary background. The lottery system was authorized by Congress in the Military Selective Service Act of 1967, 50 U.S.C.App. § 455(a) (1), and put into effect by Presidential Proclamation No. 3945, promulgated November 26, 1969. 1969 U.S.Code Cong. and Adm.News p. 2838. The first lottery drawing was held December 1, 1969, and all men between the ages of 19 and 26 were at that time assigned Random Sequence Numbers (RSN).

32 C.F.R. § 1631.7 (1970), set out more fully in the margin,[6] embraces most

---

6. 32 C.F.R. § 1631.7 (1970) provides, in pertinent part:
 "(b) Registrants shall be selected and ordered to report for induction in the following categories and in the order indicated:
 (1) Volunteers who have not attained the age of 26 years in the sequence in which they have volunteered for induction.
 (2) Nonvolunteers in the Extended Priority Selection Group in the order of their random sequence number established by random selection procedures prescribed in accordance with paragraphs (d) of Section 1631.5.

(3) Nonvolunteers in the First Priority Selection Group in the order of their random sequence number established by random selection procedures prescribed in accordance with paragraph (d) of Section 1631.5.
 (4) Nonvolunteers in each of the lower priority selection groups, in turn, within the group in the order of their random sequence number established by random selection procedures prescribed in accordance with paragraph (d) of Section 1631.5.
 (5) Nonvolunteers who have attained the age of 19 years during the calendar year

of the pertinent regulations governing selection in 1970 and 1971. In 1970 the preferred pool of registrants, known as the First Priority Selection Group (hereinafter 1970 FPSG) consisted of those men in the 1–A or 1–A–O classifications born between January 1, 1944 and December 31, 1950. Members of this group were called for induction in the order of their Random Sequence Number. In 1971 the order of sequence for induction became slightly more complex. There were now two priority selection groups: the Extended Priority Selection Group (EPSG) and the 1971 First Priority Selection Group (1971 FPSG). The EPSG consisted of registrants who on December 31, 1970 were members of the 1970 FPSG and whose RSN had been reached but who had not been ordered to report for induction. The 1971 FPSG consisted of those in the 1–A or 1–A–O classifications born in 1951, as well as those born between 1945 and 1950 who were moved from deferred classifications to 1–A or 1–A–O in 1971. The order of induction in 1971 was as follows: first (as always) volunteers; second, members of the EPSG according to their RSN; third, members of the 1971 FPSG according to their RSN.[7]

As has already been noted, defendant held a 2–S classification from December 18, 1969 until November 19, 1970. On December 23, 1970 a notice was mailed ordering him to report for induction on January 14, 1971. His RSN was 103, and it has been established by the testimony of a representative of his local board that the highest RSN reached during 1970 was 187. It is thus clear that as of November 19, 1970, defendant was in the 1970 FPSG, and that had he not received an induction order, he would have been a member of the EPSG as of January 1, 1971. It should also be mentioned that the Director of the Selective Service System had notified local boards that in January, 1971 no one from the 1971 FPSG with a RSN higher than 100 was to be inducted.

Given this background, defendant's argument in support of dismissal of the third count may be briefly stated. In late 1970, local boards were instructed to "tentatively identify" those who would enter the EPSG in January, 1971 so that inductions in that month would be facilitated. It appears that defendant was so identified by his board: a minute entry in his Selective Service file indicates that on December 22, 1970 a letter was

but who have not attained the age of 20 years, in the order of their dates of birth with the oldest being selected first.

(6) Nonvolunteers who have attained the age of 26 years in the order of their dates of birth with the youngest being selected first.

(7) Nonvolunteers who have attained the age of 18 years and 6 months and who have not attained the age of 19 years in the order of their dates of birth with the oldest being selected first.

(c) Definitions.

(1) Extended Priority Selection Group consists of registrants who on December 31 were members of the First Priority Selection Group whose random sequence number had been reached but who had not been issued Orders to Report for Induction.

(2) First Priority Selection Group:

(i) 1970. In the calendar year 1970, nonvolunteers in Class 1–A or Class 1–A–O born on or after January 1, 1944, and on or before December 31, 1950, who have not attained the 26th anniversary of the dates of their birth.

(ii) 1971 and later years. In the calendar year 1971 and each calendar year thereafter, nonvolunteers in Class 1–A or Class 1–A–O who prior to January of each such calendar year have attained the age of 19 years but not of 20 years and nonvolunteers who prior to January 1 of each such calendar year have attained the age of 19 but not of 26 years and who during that year are classified into Class 1–A or Class 1–A–O.

(3) Lower priority selection groups. One or more priority selection groups lower than the First Priority Selection Group in a given year.

(4) 'Reached' random sequence number. A registrant's random sequence number will be deemed to have been 'reached' whenever his local board has issued at any time during the calendar year an order to report for induction to another registrant in the same priority selection group and subgroup who had been assigned that or a higher random sequence number."

7. Further explanation of the nuances of the priority group selection system may be found in Crowley v. Pierce, 461 F.2d 614 (5th Cir. 1972) and Smith v. Tarr, 444 F.2d 251 (2nd Cir. 1971).

mailed advising him that he was in the EPSG. Defendant argues that he was thus inducted as an "anticipated" member of the EPSG and, relying on United States v. Bean, 461 F.2d 664 (9th Cir. 1972) and United States v. MacDonald, 340 F.Supp. 7 (N.D.Cal.1972), contends that an induction order based on an anticipatory assignment to a selection group is illegal. Although his principal emphasis is on the prematurity of the induction order, defendant appears to proffer an alternative argument as well. As of January, 1971 he could not be a member of the EPSG: the EPSG, it will be remembered, consisted of those whose RSN had been reached in 1970 but who had *not* received an induction order. Defendant, however, had received one on December 23, 1970. If not a member of the EPSG, the argument continues, defendant was by process of elimination a member of the 1971 FPSG. As such, he could not possibly be inducted in January, 1971 because the RSN ceiling for that month was 100, and his number, 103.

I have concluded that these arguments, although they demonstrate an admirable facility for juggling Selective Service regulations, fail to demonstrate that defendant's induction order was invalid. The defense asserted here must first be considered in the light of United States v. Strayhorn, 471 F.2d 661 (2nd Cir. 1972), the most extensive consideration by our Court of Appeals of the order of call defense. While acknowledging that "the order of call defense serves as a safeguard of the individual's right to be treated with due process of law by federal administrative agencies," the court noted that "not every minor slip-up represents such an affront to the priority rules and notions of due process as to require the rather drastic sanction of reversing a criminal conviction for failure to submit to induction." The court developed what appears to be a two-step test for scrutinizing a challenged induction call. First, the court must determine "whether [the board's] handling of the challenged call is 'so lacking in support in the record as to be arbi-

trary and capricious.'" Second, the court must ascertain whether the defendant suffered "actual prejudice" by this misfeasance; such prejudice is defined as "wholly unjustified delay of the induction of enough 1–A registrants so that if the local board acted correctly, the defendant would not have been called when he was." See also United States v. Weintraub, 429 F.2d 658 (2nd Cir. 1970), cert. denied, 400 U.S. 1014, 91 S.Ct. 572, 27 L.Ed.2d 627 (1971); United States v. Degraffenreid, 471 F.2d 23 (2nd Cir. 1972).

Given this admittedly severe standard, the local board's action here was unexceptionable. To begin with, it hardly can be characterized as "arbitrary and capricious." The board acted pursuant to a directive from the national headquarters of the Selective Service System that members of the EPSG in January, 1971 be preliminarily identified so that January draft calls could be facilitated. Although the anticipatory classification of members of the EPSG may have been erroneous, it scarcely rises to the level of abuse found, for example in Gutknecht v. United States, 396 U.S. 295, 90 S.Ct. 506, 24 L.Ed.2d 532 (1970), an early order of call case. There, the defendant, having been classified 1–A, had turned in his draft card, was thereupon declared delinquent, and six days later was ordered to report for induction. But even if this anticipatory relabeling of those in defendant's situation was illegal, and a more egregious error than I perhaps have suggested, there is no evidence that defendant was prejudiced by it. For it is undisputed that as a member of the 1970 FPSG, he could have been notified in December, 1970 to report for a December induction or, if he had passed into the EPSG, that he could have been notified in January, 1971 to appear for a January induction. The illogic of defendant's argument is thus amply demonstrated: had he been ordered to report for induction *earlier* than he was, he could claim no irregularity. If a December notice for a December induction would have been permissible, I fail to see how a late December notice for a Janu-

ary induction constitutes an "acceleration." Most importantly, the record contains not the slightest indication that the defendant was called for induction in preference to others with a priority higher than his. Such a showing is the essence of an order of call defense. United States v. Strayhorn, supra, 471 F.2d at 664.

The alternative argument proffered by defendant is equally unavailing. It will be remembered that defendant contended that having received an induction order, he could not be a member of the EPSG, and that in January, 1971 he must therefore have been a member of the 1971 FPSG whose RSN precluded his induction. This contention is, to put it charitably, simply erroneous. The 1971 FPSG consisted of those in the 1–A class born in 1951 and those born between 1945 and 1950 who were moved from deferred classifications to 1–A in 1971. Defendant fits neither of these sets of specifications, and could therefore not have been in the 1971 FPSG. His argument is based on the mistaken premise that in 1971 defendant must have been in some 1971 category. In actuality, the categories had no relevance whatsoever to one in defendant's situation on January 1, 1971. The categories, it must be remembered, are denominated "selection groups" and were devised to establish an order of selection. As of January 1, defendant had already been selected. The efforts of the parties in their briefs to fit him into one 1971 category or another would have done credit to Procrustes, but they are quite beside the point.

Finally, the cases cited by defendant in support of his argument here are readily distinguishable. In United States v. MacDonald, 340 F.Supp. 7 (N.D.Cal. 1972) and United States v. Bean, 461 F.2d 664 (9th Cir. 1972), the defendants, both of whom were born in 1951, had been issued orders in December, 1970 to report for induction in January, 1971. Although they would have become members of the 1971 FPSG on January 1, the courts in each instance held the induction orders premature and therefore invalid.

But the difference between *Bean* and *MacDonald* and the instant case is obvious: those defendants, having been born in 1951 were not members of the 1970 FPSG and were thus not vulnerable to induction in 1970. Thus a "premature" induction order accelerated their vulnerability to induction, even if only by a few days. In the instant case, defendant was just as vulnerable in 1970 (as a member of the FPSG) as he would have been in 1971 (as a member of the EPSG). His premature reclassification thus worked no prejudice. It was, in short, precisely the kind of "minor slip-up" which the *Strayhorn* court found could not justify absolving a registrant of failure to obey an induction order. Accordingly, I find the defendant guilty as charged in Count 3.

In conclusion, I find the defendant guilty of failing to report for induction into the Armed Forces in violation of 50 U.S.C.App. § 462(a) and 32 C.F.R. § 1632.14, as charged in Counts 2 and 3 of the indictment.

It is so ordered.