**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Larry Glen WILLIAMS, Defendant-Appellant.**

**No. 131–69.**

United States Court of Appeals Tenth Circuit.

Jan. 12, 1970.

Givens L. Adams, Atty., Dept. of Justice, Washington, D. C. (B. Andrew Potter, U. S. Atty., and Ronald L. Howland, Asst. U. S. Atty., Oklahoma City, Okl., on the brief) for plaintiff-appellee.

Melvin J. Spencer, of Miller, Melone, Wilson, Adams & Spencer, Oklahoma City, Okl., for defendant-appellant.

Before HILL and SETH, Circuit Judges, and THEIS, District Judge.

PER CURIAM.

Larry Glen Williams, appellant herein, was indicted for his refusal to submit to induction into the Armed Forces of the United States, in violation of 50 U.S.C. A. App. § 462. Following a plea of not guilty, and a waiver of trial by jury, the case was tried to the Court. The appellant was found guilty and sentenced to imprisonment for five years. From this conviction and judgment he has perfected this appeal.

Before examining the issues raised by the appellant, we first summarize the facts as they appear from the record. Appellant initially registered with the Selective Service System, Local Board No. 71, Stephens County, Oklahoma, on March 26, 1964. He was subsequently married and had a child. The local board was duly notified of these circumstances and on April 27, 1965, he was reclassified III–A. On July 28, 1966, while living with his wife and family, the appellant notified the local board by letter that he was a Jehovah's Witness and requested a conscientious objector form. This form was furnished by the local board and appellant completed it and returned it to the board on August 17, 1966. Nothing in the record indicates other than that this form was filed in good faith and it stated in detail his reasons for requesting the new classification.

On August 23, 1966, a Mrs. Thomas, Executive Secretary of the local board (hereinafter referred to as "clerk") wrote the appellant advising him that his present III–A classification was lower than the requested I–A–O classification. The clerk admitted on cross-examination at the appellant's trial that to her knowledge his request had never been ruled upon by the local board. She further testified that the appellant's Selective Service file did not indicate any action by the board on his request.

In June, 1967, while appellant and his family were residing in Wichita Falls, Texas, appellant's wife left him, returned with their child to her parents' home in Stephens County, Oklahoma, and began a divorce suit on July 3, 1967. Eleven days after appellant's wife filed for divorce he received a "Current Information" questionnaire from the local board. On August 15, 1967, appellant was reclassified I–A. Three days later he was ordered to report for his physical examination. After receiving this notice he went to the local board and again requested a conscientious objector form. His uncontradicted testimony indicated that the clerk advised him that " * * * it wouldn't make any difference * * * that my efforts would be just wasting my time * * * they (the draft board) wouldn't give me a conscientious objector classification. * * *"

Evidence was admitted to show appellant's then mental status concerning pursuance of administrative rights and that appellant's wife employed as counsel in her divorce action the attorney who acted as appeals agent for the local draft board. Although there is nothing in the record to indicate impropriety, or conflict of interest, as such, again the uncontradicted testimony of the appellant indicates that his wife was familiar with her attorney's position as a draft board official, that she hoped to exploit her husband's draft situation and thereby expedite her divorce, and that she had told the appellant that her attorney could somehow help her get him into the army. Appellant testified also that he thought his wife's attorney was a member of the draft board and that the draft board and appeals board were composed of the same persons.

The record indicates that the appellant maintained communication with the local board at all times and complied with each of their orders, except the one to report for induction. On November 14, 1967, the defendant failed to report for induction as ordered by the local board. His indictment, trial and conviction ensued. Appellant brings this appeal, contending that he is entitled to draft status as a conscientious objector, that he was denied due process by the local board in his classification and induction proceedings, and that his failure to appeal the local board's decision for induction is excused by the unusual and exceptional circumstances present in the case.

The Government relies primarily on the fact that the appellant did not exhaust his administrative remedies and is thereby precluded from now urging a denial of due process and the invalidity of his classification as a defense to the indictment. The Government admitted, arguendo, at least, that from reviewing the appellant's file he was probably entitled to an exemption from military service as a conscientious objector, but asserts that he is barred from raising this question because he failed to appeal his classification to the appeals board after being classified I–A by the local draft board. The appellant asserts that the courts are bound to relax the strict exhaustion rule for good cause and that the District Court erred by not doing so under the state of the facts. The District Court found that because of the defendant's failure to perfect an administrative appeal it was precluded from examining whether there was any basis in fact for his I–A classification, and whether he was denied due process of law. This is the crux of the issues presented on appeal.

The appellant's case must stand or fall on this question. If it appears that the

exhaustion rule applies, then the conviction must be affirmed without going further. However, if this case comes within the very limited exception to that rule, then the conviction must be viewed to see if the appellant was afforded due process by the local board. The facts that would give rise to the exhaustion exception here, likewise go to the contention that a lack of procedural fairness was afforded the appellant by the board.

■ Judicial review of a proceeding such as this is extremely limited. See Campbell v. United States, 221 F.2d 454 (4 Cir.1955). Generally, the only two questions before the Court in cases such as this are whether the board's decision is unsupported by any basis in fact, and whether there has been a denial of basic procedural fairness. Parrott v. United States, 370 F.2d 388, 396 (9 Cir.1966), cert. denied, Lawrence v. United States, 387 U.S. 908, 87 S.Ct. 1690, 18 L.Ed.2d 625 (1967), citing Witmer v. United States, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428 (1955), and Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132 (1953). It is unnecessary to decide in this case whether the local board's classification was unsupported by any basis of fact. However, before reaching the due process question it must be determined whether the exhaustion rule should be applied.

■ After receiving a classification with which the registrant is dissatisfied, he may request a personal appearance before the local board (32 C.F.R. 1624.1) or appeal this classification to the appeals board (32 C.F.R. 1626.2(c) (1) ). In order for a registrant to assert the invalidity of a given classification as a defense to a criminal indictment for disobeying an induction order, he must first seek to have that classification set aside administratively by exhausting all of his administrative remedies. Falbo v. United States, 320 U.S. 549, 64 S.Ct. 346, 88 L.Ed. 305 (1944); Noland v. United States, 380 F.2d 1016 (10 Cir. 1967), cert. denied 389 U.S. 945, 88 S.Ct. 308, 19 L.Ed.2d 299. Failure to do so is generally held to be a waiver of the right to question the validity of that classification in any subsequent proceeding. Noland v. United States, supra, at 1017; Thompson v. United States, 380 F.2d 86 (10 Cir.1967).

The reason for strict adherence to this general rule is so that the appeals board will have an opportunity to classify the registrant de novo and correct any deviation from due process that might exist. Ayers v. United States, 240 F.2d 802 (9 Cir.1956), cert. denied 352 U.S. 1016, 77 S.Ct. 563, 1 L.Ed.2d 548. This Court has held that the federal courts are not to sit as "super draft boards" and their function is strictly limited. Carlson v. United States, 364 F.2d 914 (10 Cir.1966).

■ The rule requiring exhaustion, however, is not absolute and inflexible. It may be relaxed under unusual and exceptional circumstances. The leading case in this area is Glover v. United States, 286 F.2d 84 (8 Cir.1961). In the Glover case the Court examined the circumstances surrounding the case and determined that the appellant was justified, as a reasonable person, in believing that nothing further could be accomplished through the appellate procedure. Although the facts were not the same as those confronting the court in this case, Glover adequately demonstrates that the exhaustion rule is not absolute. In that case the appellant had unsuccessfully appealed prior classifications, and finally recognizing its apparent futility, failed to appeal his last I–A classification.

The appellant also relies on the case of Donato v. United States, 302 F.2d 468 (9 Cir. 1962) wherein it was held that where the defendant had been summoned to fire fighting duty before the time for his appeal had lapsed and did not return until after that time had expired, such was a proper case for relaxing the rule regarding exhaustion.

Likewise, we have recognized that when faced with unusual and exceptional circumstances, a failure to exhaust administrative remedies by appealing a

classification will be excused. Thompson v. United States, supra.

We have also held that a local board's decision may be set aside if it appears that there is evidence that the appellant has been denied a procedural right actually prejudicial to his substantial rights. Olguin v. United States, 392 F.2d 329 (10 Cir.1968).

■ If it can be determined that the local board failed to afford the appellant due process, its action ordering him to report for induction is invalid and the conviction must be reversed. Knox v. United States, 200 F.2d 398 (9 Cir.1952).

The appellant relies heavily on the case of Bejelis v. United States, 206 F.2d 354 (6 Cir.1953) to support his contention that he was denied due process by the local board. In that case the registrant appeared personally before the board but was told that it was needless for him to contest his classification because they were going to send it to the appeals board. The Court held that this denied the appellant due process and reversed the conviction. We have stated that it is "* * * plain error or defect affecting [appellant's] substantial rights * * *," for a local board to fail to consider a claim for a conscientious objector exemption. Quaid v. United States, 386 F.2d 25 (10 Cir.1967).

For an interesting discussion by a District Court of a case substantially identical to the present case, see United States v. Bryan, 263 F.Supp. 895 (N.D. Ga.1967). Here the defendant, a member of the Jehovah Witness sect, went to the local board and inquired about being a conscientious objector. He was told by the clerk that it would be futile to proceed any further. The District Court held that this was a proper case for relaxing the exhaustion rule and that the registrant had been denied due process by the misleading statements of the clerk of the local draft board. For a late case, holding the factual situation insufficient to invoke the exhaustion rule, see United States v. Dunn, 264 F.

Supp. 112 (D.Mass.1967), affirmed 383 F.2d 357 (1 Cir.1967), cert. denied 390 U.S. 982, 88 S.Ct. 1103, 19 L.Ed.2d 1280.

■ In the case before us, the appellant believed that the draft board and the appeals board were one and the same, that his wife's attorney in the divorce action was a member of the draft board, and that Mrs. Thomas, the clerk of the board, spoke for the draft board. It also appeared that after the date of his classification, from which he had a thirty-day appeal period, and just prior to his taking the physical examination, he personally appeared at the board to renew his claim to a conscientious objector's status. It was at this time that the clerk of the draft board made the statement to him that such a claim was fruitless to pursue. It is to be noted that a local draft board, in most instances, as far as a registrant is concerned, and from his contacts with it, is personified by the clerk of the board, acting as its executive secretary and running its office from day to day.

From the facts before us there would seem to be no question concerning the fact that the appellant was affirmatively mislead by the clerk's statement concerning the futility of trying to obtain a conscientious objector's exemption. All the appellant knew, or should have known from reading the back of his classification card, was that he had the right to appeal. He also knew that his classification card referred him to any local board for information and advice regarding any questions he might have. The law itself provides that he has the right to make a personal appearance or to appeal his classification within thirty days of the classification date. While the appellant here technically did not appear before the whole board, he did make a physical appearance within the thirty-day period before the clerk of the local board and was plainly justified in relying on her advice and apparent agency and authority to render such advice.

In view of the fast sequence of the incidents of induction from the draft

board level, appellant's belief that his wife's attorney was a member of the draft board, and the statement of the clerk of the board concerning the futility of a further effort to pursue the conscientious objector status, the groundwork was well laid in the subjective mind of the appellant that he had exhausted his administrative remedies before the board, including appeal. The factual situation here presents a proper exception to the exhaustion rule.

It also appears from the same facts that the appellant was denied due process by the failure of the draft board to affirmatively consider his application for a conscientious objector's status, and the misleading statements of the clerk of the draft board. No right of due process can be more important that that of a prospective citizen-soldier to receive fundamental fairness from a draft board.

The motion of the appellant, as defendant, for a directed verdict of acquittal should have been sustained by the trial court. The conviction is reversed and the cause remanded to the District Court for direction to the local draft board for further proceedings concerning the classification status of the appellant.