**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Gerald Dewayne McDUFFIE, Defendant-Appellant.**

**No. 29780.**

United States Court of Appeals,
Fifth Circuit.

May 11, 1971.

Shalle Stephen Fine, Miami, Fla., court-appointed, for defendant-appellant.

Robert W. Rust, U. S. Atty., Jose E. Martinez, Mervyn L. Ames, Asst. U. S. Attys., Miami, Fla., for plaintiff-appellee.

Before THORNBERRY and GODBOLD, Circuit Judges, and BOTTLE, District Judge.

GODBOLD, Circuit Judge:

Gerald McDuffie appeals from a nonjury conviction of refusing to submit to the induction order of his local draft board, in violation of 50 U.S.C. App. § 462 which makes it a crime for a Selective Service registrant knowingly to fail or neglect to perform a duty required by the Selective Service Act or regulations issued thereunder. We affirm.

After registering in March, 1967, McDuffie returned the Classification Questionnaire Form 100 indicating he wished conscientious objector status. A Form 150, a special application for conscientious objector status, was mailed to him on May 31, 1967, but he did not return it. The board, on June 16, requested him to return the Form 150 completed, and on July 18, not having received the form, classified McDuffie 1–A.

### 1.

■ Board procedures followed at McDuffie's classification did not comport with the Administrative Procedure Act, 5 U.S.C. § 551 et seq. The present Selective Service Act explicitly exempts the operation of the APA to classification proceedings. 50 U.S.C. App. § 463(b). This principle has not been changed by the fact that, when the Selective Service Act was reenacted in 1967, it failed to cite the correct reference to the APA. The 1951 draft law stated:

> All functions performed under this title * * * shall be excluded from the operation of the Administrative Procedure Act (60 Stat. 237) * * * except as to the requirements of section 3 of such Act.

(Section 3 of the APA deals with freedom of information). The 1967 Selective Service Act kept this provision as it is. But in 1966 the APA had been amended, the new citation being 80 Stat. 380, and when Congress enacted the Selective Service Act of 1967, it failed to update the citation to the APA.

This error does not reach the dignity of a repealer of the prior Selective Serv-

ice Act. The logical intention of Congress in 1967 was not to exclude an act already superseded. Additionally, 50 U.S.C. App. § 460(b) authorizes the President to prescribe the necessary administrative procedures to effectuate the 1967 Selective Service Act; thus, Congress has chosen another route for selective service administrative procedures and, by an ordinary reading of 50 U.S.C. App. § 463(b), it would defy reason to conclude otherwise.

The APA is not Congress's response to a constitutional mandate, but to its own judgment. The Act is a blanket procedural statute, which, by its own terms, leaves room for special procedures to be established to suit the particular needs of individual agencies. Congress has, in turn, provided procedural standards for the operation of the Selective Service System, and if the administrative practice fails to comport with the legislative standard, or with constitutional requirements, a court can act to correct the situation. Defendant feels the rules in which he is interested are so significant that the public should be permitted to participate in their formulation; Congress's value judgment was apparently different, and a rational basis for that judgment is easily discernible. Defendant's remedy is to persuade Congress to change its value judgment.

United States v. Clinton, 310 F.Supp. 333, 336 (E.D.La.1970).

### 2.

■■ It was not error for the local board to classify McDuffie 1–A when it had before it no evidence tending to refute McDuffie's statement on his classification questionnaire that he was a conscientious objector. Between his classification on July 18, 1967, and his date for induction, February 12, 1969, McDuffie did not appear personally or appeal his classification as provided by Selective Service Regulations, 32 C.F.R. §§ 1602–1690. He is foreclosed from contending his classification was erroneous since he failed to exhaust the necessary administrative remedies. See DuVernay v. United States, 394 F.2d 979 (5th Cir. 1968), affd. by an equally divided Court, 394 U.S. 309, 89 S.Ct. 1186, 22 L.Ed.2d 306 (1969).

The necessity for exhaustion is not avoided by McKart v. United States, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969), which concerned a matter of statutory construction not requiring particular expertise by the appeal board. Nor is United States v. Davila, 429 F.2d 481 (5th Cir. 1970), to the contrary. Davila made out a prima facie case of CO status by the contents of his Form 150. The board file contained no facts to the contrary. Thus the only issue for the appeal board was the legal question of the sufficiency of the undisputed evidence of CO status presented by the registrant, as to which that board's expertise would be of minimal value. Had Davila appealed his classification, no further facts could have been developed. Therefore, exhaustion was not required as a condition to judicial review. Appellant is in the converse position. He presented no support for his assertion of CO status; in fact he did no more than tell the board he claimed to be a conscientious objector. There being no record to support his claim, exhaustion was particularly applicable because of the possibility that an administrative appeal might put some flesh on his barebones claim and present the type of CO issue as to which the board's expertise is useful, *McKart*, 395 U.S. at 198 n. 16, 89 S.Ct. 1657, 23 L.Ed.2d at 206 n. 16.

We would frustrate administration of the Selective Service System by permitting a registrant first to stand aloof from the process designed to bring such possibly determinative facts to light * * * and then to challenge the firmness of the factual foundation for his draft board's discretionary actions.

United States v. Houston, 433 F.2d 939 (2d Cir. 1970).

Of course, it is necessary that the local board, which has the responsibil-

ity of classifying registrants in the first instance be given the information necessary to perform its function. However, the present case does not present an instance where a registrant is trying to challenge a classification on the basis of facts not presented to the local board. In such a case, the smooth functioning of the system may well require that challenges to classifications based upon facts not properly presented to the board be barred. In the case before us, the board was aware of the relevant facts when it made its decision to reclassify petitioner I–A; no further factual inquiry would have been at all useful. *McKart*, 395 U.S. at 198 n. 15, 89 S.Ct. at 1665, 23 L.Ed.2d 194 at 206 n. 15.

■ Even if we pretermitted the exhaustion question, we could not say there is no basis in fact for the board's classification. The registrant bears the burden of clearly establishing his right to the exemption, and "the board has no affirmative duty to ascertain whether or not the registrant qualifies for the exemption." McCoy v. United States, 403 F.2d 896, 899–900 (5th Cir. 1968). *See also* Robertson v. United States, 417 F. 2d 440, 445 (5th Cir. 1969), Camp v. United States, 413 F.2d 419, 422 (5th Cir. 1969); Clay v. United States, 397 F.2d 901, 916 (5th Cir. 1968). McDuffie has done no more than state he claims conscientious objector status. A claim of CO status in the Form 100 is also a request to be furnished the special and detailed Form 150. *See* SSS Form No. 100. Form 150 is the instrument by which a claim of conscientious objection made in the Form 100 is further developed or perfected. "The importance of Form 150 is the comprehensiveness of its questions which spread into all the facets of a conscientious objector claim which a registrant is required to present to the board." United States v. Turners, 421 F.2d 1251 (3d Cir. 1970).[1]

■■ Once a registrant presents a prima facie case of conscientious objection, the local board, in order to rule against the claim, must have affirmative evidence in the record refuting it. *See* United States v. Davila, 429 F.2d 481, 483 (5th Cir. 1970); United States v. White, 421 F.2d 487, 492 (5th Cir. 1969); *cf.* Dickinson v. United States, 346 U.S. 389, 396, 74 S.Ct. 152, 98 L.Ed. 132, 138 (1953). But to make a prima facie case, conscientious objection claims may not have their rudiments on objective facts alone "because the ultimate question in conscientious objector cases is the sincerity of the registrant in objecting * * * to participation in war in any form. In these cases, objective facts are relevant only insofar as they help in determining the sincerity of the registrant in his claimed belief, purely a subjective question." Witmer v. United States, 348 U.S. 375, 381–382, 75 S.Ct. 392, 396, 99 L.Ed. 428, 434 (1955). The lone objective fact that the registrant, in his Form 100, claims to be a conscientious objector, does not make a prima facie case on the subjective question of sincerity.

### 3.

■ McDuffie urges that when there exists no national emergency (in the World War II context), and when the available manpower is such that the supply far exceeds the demand,[2] then, irrespective of his religion, his freedoms per-

1. The Regulations provide the backdrop for a registrant's filing the Form 150 in order to be considered for CO status: "A registrant who claims to be a conscientious objector shall offer information in substantiation of his claim on a Special Form for conscientious objector (SSS Form No. 150) which, when filed, shall become a part of his Classification Questionnaire (SSS Form No. 100). The local board, upon request, shall furnish to any person claiming to be a conscientious objector a copy of such Special Form for Conscientious Objector (SSS Form No. 150)." 32 C.F.R. § 1621.11.

2. We accept only for the purpose of discussion McDuffie's contention that only one out of eight or nine men available is inducted into the Armed Services.

taining to his own convictions and conscience should be considered equal to the Congressional power granted by the Constitution to raise and support armies and to provide and maintain a navy. This argument is foreclosed by our answer to a similar contention in Simmons v. United States, 406 F.2d 456 (5th Cir. 1969): "[t]hat this court is not competent or empowered to sit as a super-executive authority to review the decisions of the Executive and Legislative branches of government in regard to the necessity, method of selection, and the composition of our defense forces * * *." Simmons v. United States, 406 F.2d at 459.

### 4.

█ 50 U.S.C. App. § 462 charges registrants, under pain of criminal sanction, to fulfill the duties required in the sections of the Selective Service Act and the regulations made pursuant to the Act. McDuffie contends that no part of the statute imposes a duty upon him to submit to induction, so that such duty cannot be imposed by a regulation a violation of which is made a crime.[3] This reasoning does not grasp the import of § 462 which requires the registrant to comply with the duties promulgated in the regulations. *Cf.* Estep v. United States, 327 U.S. 114, 119, 66 S.Ct. 423, 90 L.Ed. 567, 571 (1946); Billings v. Truesdell, 321 U.S. 542, 557, 64 S.Ct. 737, 88 L.Ed. 917, 925 (1944). No unconstitutional delegation of power is involved. See United States v. Grimaud, 220 U.S. 506, 31 S.Ct. 480, 55 L.Ed. 563 (1911).

### 5.

█ The Selective Service Act does not violate Article I, Section 8, Clause 12 of the Constitution, which states that Congress has the power:

> To raise and support Armies, but no Appropriation of Money to that use shall be for a longer term than two years.

50 U.S.C. App. § 467(b) provides for the necessary appropriations to effectuate the Act. Appropriations still must come, as they do, from the House of Representatives every two years. Section 467(c), which provides for a four year life for the Act, does not govern the period for appropriations.

Affirmed.

---

3. 32 C.F.R., § 1632(14) (a) is the regulation that covers induction.