**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Jape Holley TAYLOR, Defendant-
Appellant.**

**No. 29198.**

United States Court of Appeals,
Fifth Circuit.

June 2, 1971.

Rehearing Denied and Rehearing En
Banc Denied Aug. 10, 1971.

Samuel S. Jacobson, Jacksonville, Fla., for defendant-appellant.

William Stafford, U. S. Atty., Pensacola, Fla., Stewart J. Carrouth, Asst. U. S. Atty., Tallahassee, Fla., C. W. Eggart, Jr., Asst. U. S. Atty., Pensacola, Fla., for plaintiff-appellee.

Before GEWIN, COLEMAN and AINSWORTH, Circuit Judges.

GEWIN, Circuit Judge:

Appellant Taylor was convicted for refusing to submit to induction into the armed services in violation of 50 U.S.C. App. § 462(a). On appeal he contends that his local Selective Service Board gave him misinformation which caused him to refrain from making an application for conscientious objector status prior to the date on which he was to report for induction. We affirm his conviction.

The background facts are these: Following graduation from high school,

Taylor on December 4, 1967, was given a 2-S student deferment for one year while he attended California Institute of Technology.[1] This classification was changed to 1-A (Available for Service) on November 14, 1968, when Taylor became ineligible for student deferment by accepting full time employment. Upon termination of his student deferment Taylor went to his draft board on December 16, 1968 where he requested and received Selective Service Form 150 (Application Form for Conscientious Objector Classification). The form, which quoted statutory language, stated that his conscientious objector request must be founded on a "religious belief." Because appellant had no conventional religion, he asked the board secretary, Mrs. Duncan, whether the requirement would be interpreted literally. Mrs. Duncan replied that such a question must be answered by the Board. Mrs. Duncan also advised Taylor that he had 30 days in which to return this form executed in full. Taylor took the form home with him but asserts that he subsequently decided that he could not conscientiously sign it because he did not have a religious belief in the traditional sense.

On April 24, 1969, the Board ordered Taylor to report for induction on May 16, 1969. Taylor did not report as ordered; instead he mailed a letter to the Board from Boston, Massachusetts (his local board was in Gainesville, Florida) stating that he would refuse induction for conscientious reasons.[2] Prior to that

---

1. On his initial questionnaire Taylor wrote "NA" (not applicable) in the section entitled "Series VIII.—Conscientious Objector."

2.
> Local Board #17
> Federal Building
> Gainesville, Florida
> 33601

"Dear Sirs,

It is my belief that war is wrong. Men must learn to get along with each other; they must not solve their differences by killing. I believe that the situation in the world today in which people are so afraid of each other that the military is the

largest part of our government is wrong. However, my beliefs are not based upon any conventional religious upbringing, but upon my moral upbringing and personal observation and reading of people and society. Because of these beliefs, I requested conscientious objector status, and was given form 150, I believe, to fill out and sign. This form stated that one's moral beliefs and personal philosophy were not sufficient grounds for requesting Conscientious Objector status; only religious opposition was acceptable. For this reason, I was unable to complete and sign this form, which I believe discriminates against me. I was also unable to follow instructions to either return form

time Taylor made no formal effort to assert a conscientious objector claim. The Conscientious Objector Form which he procured from the Board was never filled in and returned.[3]

Appellant's major contention is that he was misled by SSS Form 150 into thinking that it would be not only fruitless but also unconscionable for him to seek conscientious objector status; as a result he claims that he was deprived of due process of law since he was denied a full opportunity to pursue an available classification. It is true that SSS Form 150 does not mention or suggest the very broad construction of the requirements for conscientious objector religious requirements as interpreted by the Supreme Court in Welsh v. United States,[4] and United States v. Seeger.[5] In this regard it could be argued that the old Form 150 possibly did leave some questions unanswered.[6] Nevertheless, the evidence in this case is undisputed that appellant acting unilaterally decided on uncounselled, subjective information that he

could not qualify.[7] Although cases exist where misleading government activity or information constitutes a good defense to a criminal charge,[8] more is required than a bald assertion that the defendant was as a subjective matter misled, and that his subsequent action resulted from his mistaken belief. As the court stated in United States v. Lansing:[9]

> When a defendant claims, as does appellant here, that his criminal conduct was the result of reliance on misleading information furnished by the government, society's interests in the uniform enforcement of law requires at the very least that he be able to show that his reliance on the misleading information was reasonable—in the sense that a person sincerely desirous of obeying the law would have accepted the information as true, and would not have been put on notice to make further inquiries.[10]

█ Under the facts and in the circumstances of this case, we are convinced

150 or renounce my claim because I did not want to renounce my claim entirely. I am now scheduled for induction on May 16. I plan to refuse induction, but would gladly do an appropriate alternate duty. I am now in Boston on a job-related trip, and will return to Gainesville on May 18 to face whatever action is deemed appropriate.

Sincerely,
Jape Holley Taylor
8–17–49–400."

3. On cross-examination Taylor testified as follows:

Q. Mr. Taylor, you said you didn't sign the application for CO, what do you think the Board was going to pass on if you didn't put something before them?

A. I don't know.

Q. In other words, if the Board had nothing to go on did you know you had a right to appeal if they turned you down on your objection status?

A. Yes, sir.

Q. You didn't fill out the Conscientious Objector questionnaire there and you wrote a letter back and you didn't send it back to them so they had nothing at all before them, the draft clerk to present to the Board, did they?

A. That's right.

4. 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970).

5. 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965).

6. Cf. Gillette v. United States, 401 U.S. 437, 91 S.Ct. 828, 28 L.Ed.2d 168 (1971).

7. In United States v. Powers, 413 F.2d 834, 837 (1st Cir. 1969) the court observed: Were unilateral, subjective, uncounselled misunderstanding of Selective Service requirements and definitions to be a defense to prosecution, an already laboring vehicle would in all likelihood be completely immobilized.

8. See. United States v. Lowell, 437 F.2d 906, 907 (9th Cir. 1971); United States v. Bagley, 436 F.2d 55 (5th Cir. 1970); United States v. Williams, 420 F.2d 288 (10th Cir. 1970); United States v. Bryan, 263 F.Supp. 895 (N.D.Ga.1967).

9. 424 F.2d 225 (9th Cir. 1970).

10. Ibid at 227. See: United States v. Wroblewski, 432 F.2d 422 (9th Cir. 1970); United States v. Haseltine, 415 F. 2d 334 (9th Cir. 1969).

352

that Taylor acted unreasonably. Taylor testified that he interpreted the language of the form to mean that some formal or conventional religious basis was required for a conscientious objector classification, yet he made no real effort to ascertain the actual requirements for the classification despite the ready availability of information and advice at the local board. Following the example of the First Circuit Court of Appeals in United States v. Powers,[11] we take judicial notice of the fact that a registrant's Notice of Classification, which is required to be in his personal possession at all times, plainly advises registrants in capital letters—"For Information and Advice, Go To Any Local Board." Other provisions advise registrants of the availability of Government Appeal,[12] of board members ready "to advise and assist registrants in the preparation of questionnaires and other selective service forms,"[13] and of the "positive information policy" of the Selective Service Board.[14] Moreover, Taylor was specifically advised by Mrs. Duncan at his Board that to obtain the status of conscientious objector he would have to submit a written request within 30 days. When he failed to submit SSS Form 150 within the specified time limit, Mrs. Duncan wrote him on February 17, 1969, to do so at once or else he would waive any claim to the status of conscientious objector.[15] This backdrop of

information was certainly sufficient to put a person sincerely desirous of complying with the law on notice that he could have inquired of the board and learned the true status of his claim.[16] Having failed to ask for a reclassification or to press in any way before induction that he should be reclassified, or to provide the local board with any information which could warrant reconsideration of his classification, Taylor cannot now charge the board with unconscionable dereliction in violation of due process of the law. Selective Service Boards cannot be charged with neglect of duty arising out of the secretive, unilateral, uncounselled, subjective and uncommunicated decisions of a registrant based upon his individual ideas and concepts of broad philosophical, moral or religious questions.[17]

■ Appellant's second contention is that the Board committed error by refusing to reconsider his classification in light of his post-induction letter.[18] While courts have exercised discretion in rare and unusual cases in determining whether to consider conscientious objector claims filed after an order to report for induction but before refusal to report,[19] the courts are virtually unanimous in refusing to require boards to

11. 413 F.2d 834, 837 (1st Cir. 1969).

12. See 32 C.F.R. § 1604.71.

13. 32 C.F.R. § 1604.41.

14. 32 C.F.R. § 1606.61.

15. Mrs. Duncan wrote to appellant as follows:

Feb. 17, 1969
Dear Sir:
On December 16, 1968 you were issued SSS Form 150. This was to be completed and returned to this office in 30 days. To date this completed form has not been returned. Please return this form at once or sign the statement below and return. Thank you.
Yours truly
FOR THE BOARD
(Mrs.) Reba K. Duncan
Executive Secretary

I hereby withdraw my claim as a Conscientious Objector.
Signed: _____
Registrant

16. For example, see: Welsh v. United States 398 U.S. 333, 90 S.Ct. 1792, 26 L. Ed.2d 308 (1970); United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L. Ed.2d 733 (1965).

17. See McGee v. United States, 402 U.S. 479, 91 S.Ct. 1565, 29 L.Ed.2d 47 (No. 362, May 17, 1971).

18. See note 2.

19. United States v. Long, 435 F.2d 830 (10th Cir. 1971); United States v. Williams, 420 F.2d 288 (10th Cir. 1970).

recognize post induction claims.[20] As the court said in Palmer v. United States:[21]

> Classification functions of the local board cease with induction, and a registrant cannot, by refusing to submit to induction, impose upon the board any new duties respecting reclassification or reopening * * * To permit such imposition would be highly disruptive of the Selective Service process.[22]

The reason for the strict adherence to this rule against consideration of post induction claims was discussed with approval by the Supreme Court in Ehlert v. United States:[23]

> A regulation explicitly providing that no conscientious objector claim could be considered by a local board unless filed before the mailing of an induction notice would, we think, be perfectly valid, provided that no inductee could be ordered to combatant training or service before a prompt, fair, and proper in-service determination of his claim. The Military Selective Service Act of 1967 confers on the President authority "to prescribe the necessary rules and regulations to carry out the provisions of this title * * *" 50 U.S.C. App. § 460(b) (1). To read out of the authority delegated by this section the power to make reasonable

timeliness rules would render it impossible to require the submission, before mailing of an induction notice, of a claim matured before that time. The System needs and has the power to make reasonable timeliness rules for the presentation of claims to exemption from service.

> A regulation barring post-induction notice presentation of conscientious objector claims, with the proviso mentioned, would be entirely reasonable as a timeliness rule. Selective Service boards must already handle prenotice claims, and the military has procedures for processing conscientious objector claims that mature in the service. Allocation of the burden of handling claims that first arise in the brief period between notice and induction seems well within the discretion of those concerned with choosing the most feasible means for operating the Selective Service and military systems.[24]

■ There was no due process violation in the draft board's refusal to reconsider Taylor's application. The Selective Service Board has no obligation to act upon requests which are made by registrants after the date for his induction has passed.[25] Accordingly, the judgment of conviction is affirmed.

---

20. United States v. McDuffie, 443 F.2d 1163 (5th Cir. 1971) [No. 29780, May 11, 1971]; United States v. Lowell, 437 F.2d 906, 908 (9th Cir. 1971); United States v. Schrader, 435 F.2d 854, 855 (9th Cir. 1971); United States v. Daniell, 435 F.2d 884 (1st Cir. 1970); United States v. Collins, 426 F.2d 765, 766 (5th Cir. 1970); United States v. Robley, 423 F.2d 613 (9th Cir. 1970); United States v. Crutchfield, 422 F.2d 399 (4th Cir. 1970); Straight v. United States, 413 F.2d 263 (9th Cir. 1969); Dugdale v. United States, 389 F.2d 482 (9th Cir. 1968).

21. 401 F.2d 226, 227 (9th Cir. 1968).

22. Ibid at 227–228.

23. 402 U.S. 99, 91 S.Ct. 1319, 28 L.Ed.2d 625 (No. 120, April 21, 1971). See also: United States v. McDuffie, 443 F.2d 1163 (5th Cir. 1971) [No. 29780, May 11, 1971].

At oral argument it was felt that a decision in *Ehlert* would have a substantial bearing on the issues here presented. Accordingly, we delayed our decision until the *Ehlert* opinion was released.

24. 91 S.Ct. at 1322. The instant case is not identical to *Ehlert* because there is no claim of crystallization of belief after the receipt of notice of induction but rather this is a case of late filing of a previously matured conscientious objector's belief. It would appear that a registrant who asserts that his conscientious objector beliefs crystallized after receipt of induction notice would have a stronger case than one who claims to have held such beliefs long before receipt of such notice. See: United States v. Nix, 437 F.2d 746 (9th Cir. 1971).

25. Ehlert v. United States, 402 U.S. 99, 91 S.Ct. 1319, 28 L.Ed.2d 625 (No. 120, April 21, 1971); Austin v. United States, 434 F.2d 1301 (5th Cir. 1970); United States

ON PETITION FOR REHEARING AND PETITION FOR REHEAR-ING EN BANC

PER CURIAM:

The Petition for Rehearing is denied and the Court having been polled at the request of one of the members of the Court and a majority of the Circuit Judges who are in regular active service not having voted in favor of it, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is also denied.

Before JOHN R. BROWN, Chief Judge, and WISDOM, GEWIN, BELL, THORNBERRY, COLEMAN, GOLD-BERG, AINSWORTH, GODBOLD, DY-ER, SIMPSON, MORGAN, CLARK, IN-GRAHAM and RONEY, Circuit Judges.

JOHN R. BROWN, Chief Judge, with whom GODBOLD, Circuit Judge, joins dissenting:

Without now determining what the outcome should be the dissenting opinions reflect that this is a matter of great importance (which the panel recognized as well), and that it is en banc worthy. I dissent from the failure to grant rehearing en banc.

GOLDBERG, Circuit Judge, with whom SIMPSON, Circuit Judge, joins, dissenting.

Conscious of the travail, dedication, and scholarship that went into the writing of the panel's opinion in this case, it was with great reluctance that I requested en banc consideration. Nevertheless, because of the importance of the issues decided and because of my fundamental disagreement with the conclusions reached therein, I felt that en banc ventilation was essential. Now that my request has been rejected, I feel compelled to record my dissent.

Though there is very little that can be said in view of the lucid dissent of my Brother Simpson, an opinion in which I fully concur, my proclivity for verbosity, perhaps, impels me to add the following thoughts. In the first place, I fully subscribe to Judge Simpson's analysis of the front page of Selective Service Form 150, and his conclusion that at best it is "a half truth," and at worst it is "clearly wrong." That Form, devised for an earlier time, cannot be accepted uncritically in this post-*Welsh* and *Seeger* era of Selective Service law. The panel itself admits that the Form may be ambiguous or misleading. While it is true that it is couched in terms of the statute's particular phraseology, it seems unlikely to me that a layman would construe the language to encompass more than conventional religious beliefs. Certainly, the Form does nothing to dispel this rather obvious interpretation. I would think that in this light a registrant would be acting reasonably in relying, without more, on the only explanatory material provided by the Selective Service System. The printed word, after all, has its own talismanic fetishism. Where it has been issued and distributed by the Government and thus bears a governmental imprimatur, it becomes in the hands of the registrant ipse dixit. It would seem to me, then, that the burden should be on the Government to provide sufficient information to rebut and to clarify the otherwise obvious meaning derivable from the words in this Form.

Even if it be assumed that the Form was merely ambiguous and not affirmatively misleading, so that a registrant might have some obligation to investigate, an assumption to which I do not subscribe, I would still disagree with the panel. In the first place, characterizing Taylor's misapprehension as "secretive," "subjective," and "individual," as the panel does in its opinion, is at best

v. Berger, 434 F.2d 610, 611 (9th Cir. 1970); United States v. Hosmer, 434 F.2d 209 (1st Cir. 1970). See: United States v. Uhl, 436 F.2d 773, 774 (9th Cir. 1970); United States v. Jones, 423 F.2d 636 (4th Cir. 1970); Straight v. United States, 413 F.2d 263, 264 (9th Cir. 1969).

irrelevant. Certainly Taylor's conclusion that he could not in good faith fill out the form could be characterized as subjective, but this determination was derived from the ambiguity of the form—an objective source. The real issue then is not the subjectivity of Taylor's mistaken conclusion, but whether such a conclusion was reasonable. The nub of this issue, as the panel notes, is whether or not Taylor acted reasonably and diligently in investigating his entitlement to conscientious objector status. It is at this point that I strongly disagree with the panel, for it seems to me that Taylor clearly acted reasonably. He went to his Board to apply for conscientious objector status and met with and asked questions of its only visible representative, the Clerk. Receiving only evasive and ambiguous answers, Taylor conferred with his father, and both determined, quite reasonably it seems to me, that Taylor did not qualify for the exemption. Therefore, thinking that he had no right to a conscientious objector classification under the Selective Service System's rules and regulations, Taylor did not submit Form 150. In Taylor's view to have claimed conscientious objector status when he felt he did not qualify would not only have been an act of bad faith but also an act of futility. The panel, however, exprobrates Taylor for failing to do more. I regret that a felony conviction should turn on a registrant's failure to pursue a series of additional, though obviously, at least to him, futile acts.

SIMPSON, Circuit Judge, with whom GOLDBERG, Circuit Judge, joins, dissenting:

I respectfully dissent from the Court's failure to grant rehearing en banc.

It is my conviction that the Selective Service System Form for making application for conscientious objector status (Form 150) is patently and unreasonably misleading to most registrants. The inference is compelling that this is responsible for causing many registrants with valid CO claims (including the appellant Taylor) to forego applying for such status. The front page of Form 150 reads:

> Section 6(j) of the Military Selective Service Act of 1967 provides: "Nothing contained in this title shall be construed to require any person to be subject to combatant training and service in the Armed Forces of the United States, who, by reason of religious training and belief, is conscientiously opposed to participation in war in any form. As used in this subsection, the term 'religious training and belief' does not include essentially political, sociological, or philosophical views, or a merely personal moral code. Any person claiming exemption from combatant training and service because of such conscientious objections whose claim is sustained by the local board shall, if he is inducted into the Armed Forces under this title, be assigned to noncombatant service as defined by the President, or shall, if he is found to be conscientiously opposed to participation in such noncombatant service, in lieu of such induction, be ordered by his local board, subject to such regulations as the President may prescribe, to perform for a period equal to the period prescribed in section 4(b) such civilian work contributing to the maintenance of the national health, safety, or interest as the local board pursuant to Presidential regulations may deem appropriate and any such person who knowingly fails or neglects to obey any such order from his local board shall be deemed, for the purposes of section 12 of this title, to have knowingly failed or neglected to perform a duty required of him under this title."

Most registrants are not lawyers. Without guidance "religious training *and* belief" must be understood by them to be used in the conventional sense, that is to say, in addition to belief in a Supreme Being, as including training and membership in and adherence to the beliefs of a formally constituted religious

organization. What the forms fails to inform the registrant is that two United States Supreme Court opinions, United States v. Seeger, 1965, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733, and Welsh v. United States, 1971, 398 U.S. 333, 90 S. Ct. 1792, 26 L.Ed.2d 308, have considerably enlarged on the conventional meaning of "religious training and belief", and have held that in some circumstances deeply held personal beliefs not commonly thought of on the street as "religious" may qualify as "religious" within the meaning of the statute. Form 150 not only does not reveal this critical legal development to the layman registrant, but actually appears to indicate a precisely opposite meaning—that deeply held personal beliefs cannot be the basis for a CO claim. At its best, Form 150 is a half truth, and at worst, the information contained therein is clearly wrong. In many areas of the law we recognize that to neglect to reveal a material fact, in effect to tell a half truth, may be as misleading and as culpable as an outright lie. That doctrine fits this situation.

This is not at all to advocate that all court rulings relevant to the Selective Service System must be revealed literally in the forms used. But the information contained on the front cover of Form 150 has been a deceptively misleading half truth since *Seeger* came down, for more than five years. The average registrant may not be expected to keep abreast of Supreme Court rulings. Moreover, the entire emphasis of the Selective Service System at this stage of the process, i. e. classification, is nonlegal. Registrants are not allowed to have legal counsel in attendance at a personal appearance before the local board when requesting a classification. Registrants are informed that if they have any *recognizable* legal problems, that the board has a legal advisor who will consult with the registrant upon request. The attitude projected is "you don't need a lawyer because you're in good hands with your square-shooting local Selective Service Board." Further, young registrants, typically age 18 to 26, at least to any significant extent do not have the financial resources to employ lawyers to keep them informed as to recent and relevant Selective Service rulings. For these reasons I would hold the Selective Service System to a strong affirmative obligation of frankness and candor regarding the state of applicable law in its dealings with registrants. Any other standard seems to me shocking in its callousness.

It is a legitimate deduction that the retention of the outdated information on Form 150 nullifies in large part the effect of *Seeger* and *Welsh*. This result may be that intended by high officials of the Selective Service System, but it is unnecessary to speculate in this respect. The adverse effect on such registrants as Jape Holley Taylor is the same whether caused by negligence or deliberate deception.

The average registrant whose contemplated CO application is based on other than traditional religious grounds may be expected to study the form uncritically, give the word "religious" its common every day connotation involving organized religion and conclude that he does not qualify for CO status. He is unlikely (and should not reasonably be expected) to research the law to determine whether "religious" has any hidden meaning. Only too late, after he refuses induction, is charged criminally and is provided with counsel, does he learn that he may have had a valid CO claim from the beginning. See for example what happened to Taylor, even though he counselled with his college professor father. People of this sort are not criminals. Instead they are the innocent victims of outdated procedural forms.

This case is not an isolated instance. In the past few months this Court has been faced with similar problems created by misinformation given to a registrant by his draft board or its clerk. See, e. g., Edwards v. Selective Service Local Board No. 111, 5 Cir. 1970, 432 F.2d 287,

United States v. Bagley, 5 Cir. 1970, 436 F.2d 55. McGee v. United States, 401 U.S. 479, 91 S.Ct. 1565, 29 L.Ed.2d 47 is not at variance with these sentiments. In *McGee* the Court was faced with a non-cooperating registrant who refused to fill out forms, and declared that he would not cooperate with the local board. By contrast, in *Taylor*, *Edwards*, supra, and similar misinformation cases we have cooperative registrants willing to work with local boards to receive the classification to which the law entitles them, who instead find themselves thwarted in that effort by misleading advice from the Selective Service System itself.

There is no indication in the record in this case that Taylor's beliefs are not sincerely held sufficiently to qualify for conscientious objector status under *Walsh* and *Seeger*. His conviction is allowed to stand, however, because he did not timely assert his CO claim. The blame for this tragic set of circumstances should fall squarely on officials of the Selective Service System. I would like to see a holding that the unreasonable actions of the Selective Service System denied to Jape Holley Taylor that due process of law to which he was constitutionally entitled. This conviction should not stand.